GEO. M. CRABB, Administrator, Appellee, v. WILLIAM SHANKS, Appellant.

No. 44578.

590

MARCH 14, 1939.

Blythe, Markley, Rule, Dibble & Cerney and McNett, Kuhns & Brown, for appellant.

Breese & Cornwell, for appellee.

RICHARDS, J.—The accident, in which plaintiff suffered the injuries on account of which she sought damages in this action, occurred in the evening of September 20, 1936, at about 8 o'clock. Plaintiff and a Mrs. Stearns and the latter's two sons were at the time riding as guests of defendant in an automobile that he was driving. In the early afternoon of the same day this group of neighborhood friends had departed from Mason City, where they resided, upon a pleasure outing, as they had done on frequent occasions. The itinerary included Albert Lea, Minnesota, and Forest City. Returning toward Mason City they passed through Garner. There it was growing dark, and headlights were turned on. From Garner they proceeded east

on primary highway No. 18 a few miles to a place where the course of the highway described a quarter circle. A vehicle proceeding as was this one, after traveling over this curved portion would be proceeding north upon the same primary highway. As defendant's car had just completed the traversing of this curve, and was headed in a northerly direction, it suddenly went to the east and overturned on its right side in a ditch that was immediately at the east side of the highway. Plaintiff's physical injuries resulted. Upon a trial on the merits there was a verdict for the plaintiff Florence L. Ginder. From the judgment rendered thereon against defendant he perfected an appeal. Subsequently the administrator of Florence L. Ginder then deceased was substituted as plaintiff. But for brevity our discussion will be phrased as though the decedent had continued to be the plaintiff-appellee.

At the time of this occurrence section 5026-b1, Code 1935, provided that "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle." There was no suggestion of use of intoxicating liquor by defendant. What plaintiff claimed was the right to recover for damages because there was an alleged reckless operation of the automobile by defendant at the time of the accident, causing her injuries.

Defendant made and the court overruled a motion for a directed verdict against plaintiff, one ground being that the evidence failed to show reckless operation of the car. The question is presented whether on account of this ground the court should have sustained the motion.

That which plaintiff in her petition pleaded as constituting reckless operation of the car by defendant was thus stated; "that the defendant heedlessly and recklessly attempted to turn the sharp corner at a rate of speed of approximately forty (40) miles per hour; that the defendant failed to slow down and to have his car under control in attempting to turn same sharply to the left to follow the pavement; that as a result thereof, the momentum of said car carried it off the pavement and across the shoulder and into the ditch and against an embankment on

the right hand side of the road." The "sharp corner" mentioned in the quotation is a reference to the curve of which we have spoken. In another portion of the petition plaintiff describes the curve as "a sharp turn in the road".

Facts that are undisputed are these; defendant owned the automobile he was driving, and it was practically new; the headlights were burning and "were good"; there had been no rain and the highway was dry; a hard dirt shoulder, on which there was gravel, extended out from the sides of the curved portion of the paving; in this shoulder, at about the point where defendant's car suddenly went to the east, there was a hole or rut running parallel with the paving and located between one and two feet from the edge of the paving, its length being two feet and its depth about six inches; features of the accident were these, defendant's car came to rest on its right side, the lights still burning and the motor running; soon afterwards when it was righted so as to stand on its wheels it was discovered that a front fender "was bent up a little", the tire on the right front wheel was blown out and that wheel was broken. Two hundred feet west of the commencement of the curve was an official "U. S. 18" sign with a letter "L" below; 400 feet west of the beginning of the curve was a large "Slow" sign, and 200 feet still further west was an arrow sign and a "no passing in 700 feet" sign; defendant was familiar with this highway and knew he was approaching this curve; his age was 64 years; he had been accustomed to driving automobiles since 1908.

At a comparatively short distance north of the place of the accident another automobile was standing partly on the paving in a disabled condition. The five persons who had been riding in that car appreciating a possibility of being struck by defendant's car were carefully observing its approach prior to and as it rounded the curve. They testified that defendant approached the curve at a speed of about 35 miles per hour and slowed down on the curve to 25 or 30 miles per hour. Mrs. Stearns testified defendant slowed down to about 30 miles per hour as he approached the curve and one of her sons fixed the speed on the curve at between 25 and 30 miles per hour. (This witness however was only 12 years old.) Defendant's testimony was that he saw the slow sign and while making the curve was traveling not faster than 25 miles per hour. But there was

the testimony of plaintiff, a lady then 62 years of age, riding in the back seat without claiming to have observed the speedometer, that between Garner and the curve defendant was driving at from 40 to 50 miles per hour and that this was not too fast and was a reasonable speed under all the circumstances there; that he did not slacken his speed from Garner until he entered the curve; that the car did not or she thought it did not slow down until about the time it went into the ditch. In this state of the record, on account of the rule that in considering the motion plaintiff's evidence should be viewed in a light as favorable to her as is reasonably possible, it seems necessary that we hold there was evidence tending to show one of the elements alleged in the petition and replied on by plaintiff in this court as constituting recklessness, i. e., that defendant drove at approximately 40 miles per hour around this curve, though this application of the rule may appear to be an approach to the limit of favoredness that is within reason. The question that remains is whether such speed and any other acts of the defendant, under the circumstances, constituted such conduct on his part that a jury would be warranted in finding that there was a reckless operation of the automobile.

In appraising the quality of defendant's conduct a circumstance emphasized by plaintiff is the nature of the curved portion of the paving. Admittedly the curve was a part of the construction of this primary highway. It was neither "a sharp turn in the road" as stated in plaintiff's petition nor one of the long sweeping curves that often may be observed on highways of the same permanent character. The record is silent concerning the radius or the length of the curve. Only by scaling a plat plaintiff offered in evidence can any opinion be formed as to the length of the curve on the right side where defendant was driving. One might conjecture the length was about 225 feet, but this would be merely an approximation. The curve was not banked but the width of the pavement around the curve was 24 feet. Plaintiff also accords importance to the testimony of some of the witnesses whose car stood to the north, to the effect that they heard the noise of brakes applied by defendant as the car came around the latter part of the curve, and to the testimony of some of these witnesses that they observed "burned tracks" extending from the car back to the edge of the pavement. Defendant deems of especial importance the

testimony of at least one of these witnesses, to the effect that he observed that these tracks ran from the hole or rut down to where the car turned over. The inferences the parties would draw from this testimony have to do with what may have been the immediate occasion of the car going into the ditch. Plaintiff's theory is that what happened resulted from the momentum created by a speed that was excessive upon such a curve. Defendant's inference is that the dropping of the front wheel into the hole produced the injury to the front wheel and tire and occasioned the upset. In this connection defendant also points out undisputed testimony to the effect that the pavement and the shoulder formed one continuous hard road surface with no way of distinguishing visually any demarcation between the paving and the adjacent portion of the shoulder. But this line of argument by the parties is discussion of but particular circumstances and conditions that are parts of the whole situation, from which must be determined the quality of defendant's conduct. The final question is whether under all the facts and circumstances there was a jury question whether recklessness appeared, within the intendment of section 5026-b1. In view of our previous holdings we think the answer must be a negative one. In Shenkle v. Mains, 216 Iowa 1324, 1331, 247 N. W. 635, 638, defendant with two guests was driving at night on a pavement 20 feet wide; there were curves in the highway; defendant's car, at the west toe of a long and very steep hill it had just descended, side-swiped a car traveling in the opposite direction driven by one Adamson. There was testimony that defendant's speed was 45 miles per hour and that the place of the accident was on one of the curves in the highway. The administrator of one of guests, who had lost his life by reason of the accident, claimed that defendant was reckless in driving at an excessive speed under the surrounding circumstances shown in the record, including the steepness of the hill and the curve in the road, and in being inattentive to the circumstances surrounding him while so driving. The opinion, after a review of our earlier authorities, states this conclusion: "Pursuant to the cases here above cited, we are required to say that the plaintiff presented a case of negligence and not the exceptional case either of intoxication or of reckless operation." This authority was followed in Wilson v. Oxborrow, 220 Iowa 1135, 264 N. W. 1. In the latter case defendant was driving upon a

10-degree curve, straddling and watching the black lines in the middle of the paving and failed to observe until within 75 feet thereof an approaching truck, although this occurrence was in the daytime and without anything obstructing defendant's vision ahead. Following the Shenkle case, supra, it was held that there was not a showing of reckless operation. Certain established facts in the Oxborrow case were looked upon as removing it still further from the field of recklessness, compared with the situation in the Shenkle case. In the Oxborrow case the presence of highway signs, such as are shown in the instant case, was one of the circumstances. Plaintiff cites cases in which we have held that the circumstances under which a defendant proceeded at a high rate of speed did generate a jury question as to recklessness. Mescher v. Brogan, 223 Iowa 573, 272 N. W. 645, Hart v. Hinkley, 215 Iowa 915, 247 N. W. 258, are perhaps the more relevant of these citations as in each the accident happened where there was a change in the course of the road. But in each of these cases it was an abrupt turn in the road that confronted the driver. A reading of these cases makes it apparent that the dangers and hazards inherent in the circumstances and surroundings, as well as the rates of speed, have no parallels in the instant case. We have frequently pointed out that ''guest'' cases must be determined consistently with the intention of the legislature as expressed in section 5026-b1. The mandate is that a host shall not be held liable for damages to a guest riding in a motor vehicle. But to this general inhibition there are the two exceptions that have been mentioned. We have often repeated and venture to mention again what was said concerning these exceptions by Justice Evans in the Shenkle case supra, [page 1328 of 216 Iowa, page 637 of 247 N. W.] that is: ''The exceptional character of these grounds [the exceptions] implies an infrequency of application thereof. To use and apply the exceptions as the general rule, and in effect to supplant the general rule with the constant use of the exceptions, is to drive against a red light. If the application of the exceptions becomes more frequent than that of the general rule, it may well be deemed a warning sign that we are misapplying the exceptions.'' We are of the opinion that the facts and circumstances in the record before us fail to bring the instant case within the exception of which plaintiff sought to avail herself. We are unable to identify or correlate facts and cir-

cumstances shown in this record that would warrant a legitimate inference that in defendant's conduct there was that which transcended, or was more than negligence. Accordingly the judgment from which defendant appealed is reversed.—Reversed.

MITCHELL, C. J., and HAMILTON, SAGER, OLIVER, STIGER, HALE, and MILLER, JJ., concur.