COVINGTON *et al. v.* CARLEY.

(In Banc. Nov. 27, 1944. Suggestion of Error Overruled Jan. 22, 1945.)

[19 So. (2d) 817. No. 35700.]

536

Hannah, **Simrall & Foote** and **Heidelberg & Roberts**, all of Hattiesburg, and **Harmon Young**, of New Augusta, for appellants.

**E. B. Cooper,** of Laurel, and **Currie & Currie,** of Hatties-
burg, for appellee.

Argued orally by **M. M. Roberts**, for appellants, and by **E. B. Cooper**, for appellee.

**Alexander, J.**, delivered the opinion of the court.

Plaintiff, who is appellee here, brought suit and recovered judgment for personal injuries suffered when an automobile driven by the defendant, Mrs. Covington, left the highway and struck a culvert. It is alleged that the driver of the car was guilty of wanton misconduct in momentarily falling asleep at the wheel. S. B. Carey, father of Mrs. Covington, was joined as a defendant upon the theory of agency.

The injury occurred in Alabama, and the law applicable to the case is found in Alabama Code 1940, Section 95 of Title 36. The statute is as follows: "The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

It being agreed that there was no wilful misconduct, our inquiry is directed solely to the question whether "wanton misconduct" was sufficiently shown to withstand the request of defendants for a peremptory instruction. If decided adversely to plaintiff's contention, other assignments of error become irrelevant.

Guest statutes of the general tenor of the Alabama act have been enacted in a number of states. Their language is not identical. Some include "gross negligence" or "reckless disregard of the rights of others," or "gross or wanton negligence." We confine discussions to those cases involving the language of the Alabama law. We could not profitably pursue definitions involving other terms, for we are not here dealing with a negligence statute. Nor are we to apply our own decisions in our solution except in so far as they may be helpful in resolving ambiguity. The purpose of the Alabama guest statute is to deny recovery to a certain class, to wit, nonpaying guests, as against the operator of a motor vehicle. Any reference therein denying immunity to those guilty of wilful or wanton misconduct must, therefore, be viewed as an exception, and a guest is limited to rights arising out of such misconduct. Crabb v. Shanks, 226 Iowa 589, 284 N. W. 446.

It is the purpose of such statutes to deny to a guest any right to sue for mere negligence. Nor is gross negligence enough unless the statute so provides. It is of interest to notice that some states, notably California, which formerly included gross negligence, have eliminated such basis and restricted liability to wilful and wanton misconduct. In construing the latter phrase, the courts of that state have held that an intent is implied and that such intent relates to misconduct and not merely to the fact that some act was intentionally done. Halter v. Malone, 11 Cal. App. (2d) 79, 53 P. (2d) 374.

As stated, the Alabama statute is not conceived as one penalizing negligence as such. Indeed, negligence and wilfulness or wantonness are incompatible terms. Galle-

gher v. Davis, 7 W. W. Harr. (Del.), 380, 183 A. 620; Law v. Gallegher, 9 W. W. Harr. (Del.), 189, 197 A. 479; Biddle v. Boyd, 9 W. W. Harr (Del.), 346, 199 A. 479; Robb v. Ramey Associates, Inc., 1 Terry (Del.), 520, 14 A. (2d) 394. Otherwise expressed, wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care. Mackey v. Robertson, 328 Pa. 504, 195 A. 870; Cousins v. Booksbaum, 51 Ohio App. 150, 200 N. E. 133.

The applicable statute has been construed by the Alabama Court in Smith v. Roland, 243 Ala. 400, 10 So. (2d) 367, 369. In holding the evidence insufficient to take to the jury the question of a truck driver's wanton misconduct involving a collision whereby plaintiff as a guest was injured, it stated " 'Gross negligence' is negligence, not wantonness. Before one can be convicted of wantonness, the facts must show that he was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct, that with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury." See also Couch v. Hutcherson, 243 Ala. 47, 8 So. (2d) 580, 141 A. L. R. 697. This is the same court which had held in Whiddon v. Malone, 220 Ala. 220, 124 So. 516, that falling asleep at the wheel is prima facie evidence of negligence.

In the statute "wilful" and "wanton" are of equal gravity and are of equal legal import, Surgan v. Parker (La. App.), 181 So. 86. Where the misconduct is wilful, there is an intentional injury. If it is wanton, there is an intentional and wrongful act or omission whose resultant harm is consciously previsioned and recklessly ignored or disregarded. For one to be recklessly indifferent to results, such results must be presented to a sensible awareness of their reasonable certainty. One may not ignore an eventuality which he does not perceive. If he recks not of impending harm, it is not because he knows

not of it but because he cares not. Indifference shuts its eyes to that which just before had been visible.

Hence wantonness characterizes a mental state aware of misconduct and indifferent to its obvious consequences. Weir v. Lukes, 13 Cal. App. (2d) 312, 56 P. (2d) 987. More than this it is projected forward to and qualifies the ultimate injury, lending to it color of a gross and unconcerned willingness which, in its moral and legal aspects, is indistinguishable from intent. Thus the original act retains a status as an important but subordinate incident. Vessel v. Seaboard Air Line R. Co., 182 Ala. 589, 62 So. 180; 67 C. J. 318. Whereas in mere negligence cases the act or omission is paramount and the resultant harm is fastened to the actor by the fibers of a fiction that he intended a result which was natural and probable. The only difference between the legal import of wilfulness and wantonness in the statute is that while both contemplate a foreseeable harm, the former chooses to cause injury and the latter chooses not to avoid it.

Such actors are by the best reasoned cases placed in the class of wilful wrongdoers. Stevers v. Walker, 233 Mo. App. 636, 125 S. W. (2d) 920; Napier v. Mooneyham (Tex. Civ. App.), 94 S. W. (2d) 564. The expressions veer definitely toward the lexicon of criminal offenses and away from the glossary of merely tortious acts. People v. McNutt, 40 Cal. App. (2d Supp.), 835, 105 P. (2d) 657; Mescher v. Brogan, 223 Iowa 573, 272 N. W. 645; Alesio v. Lococo, 134 Neb. 461, 279 N. W. 154; Hale v. Hale, 219 N. C. 191, 13 S. E. (2d) 221; Jacobs v. Nelson, 67 N. D. 27, 268 N. W. 873; Mayer v. Johnson (Tex. Civ. App.), 148 S. W. (2d) 454; Melby v. Anderson, 64 S. D. 249, 266 N. W. 135; Donelan v. Wright, 148 Kan. 287, 81 P. (2d) 50; Walldren Exp. & Van Co. v. Krug, 291 Ill. 472, 126 N. E. 97; Gimenez v. Rissen, 12 Cal. App. (2d) 152, 55 P. (2d) 292; Id., (Cal. App.), 56 P. (2d) 299; Gardner v. Kelly, 308 Ill. App. 6, 31 N. E. (2d) 278; McCoy v. Faulkenberg, 53 Ohio App. 98, 4 N. E. (2d) 281; Thomas v. Foody, 54 Ohio App. 423, 7 N. E. (2d) 820.

4 Blashfield Cyclopedia of Automobile Law (Perm. Ed.), sec. 2322; See annotation to Jones v. Pasco, 179 Va. 7, 18 S. E. (2d) 258, in 138 A. L. R. at page 1388. Cases cited by appellee have been examined and found distinguishable either in their facts or in the language of the applicable statutes. A few cases lend support to appellee's contention but are adjudged out of harmony with the prevailing view which is in accord with the Alabama decisions as well as our own.

However, we do not mean to lay down an arbitrary rule that one who by falling asleep at the wheel of an automobile injures a guest, may in no event be guilty of ''wanton misconduct.'' Even as the deliberate shutting of one's eyes to conscious peril figuratively typifies wantonness or recklessness, so the literal act of closing one's eyes in sleep is equally typical of unconscious action. Yet it is not the act of falling asleep that is under scrutiny, but conduct in driving while beset with drowsiness which portends complete incapacity and reasonably certain casualty. Unless such act is portrayed against a background of prior experience or otherwise made so reasonably certain as to constitute mere drowsiness a recognizable and recognized harbinger of imminent disaster, it does not confront a driver with a present and envisaged calamity which he either deliberately achieves or wantonly ignores.

The act or omission must, under the statute, be more than that of mere inadvertence or momentary thoughtlessness. Hamilton v. Perry (Tex. Civ. App.), 109 S. W. (2d) 1142; Robertson v. Brown, 37 Cal. App. (2d) 189, 99 P. (2d) 288; People v. McNutt, supra; Wright v. Swain, 168 Va. 315, 191 S. E. 611; Munsell v. Gardner, 136 Neb. 214, 285 N. W. 555; Blashfield, op. cit. supra, vol. 4, p. 109, sec. 2322.

On this point, the testimony must be examined to discover, if it may be, whether the premonition of actual or complete incapacity was strong enough to meet the foregoing test. The appellant, Mrs. Covington, was a capable, licensed and experienced driver. The accident hap-

pened in the afternoon after she had been driving for about 25 miles. She had a normal rest the previous night and took the wheel on the return trip after having traveled as one of the occupants in an automobile trip from Richton, Mississippi, to Marion, Alabama. Her testimony relevant to this issue is as follows:

"Q. Was anything wrong with you when you started out? A. No, sir.

"Q. Did you have a feeling of drowsiness, sleepiness or anything of that kind? A. No, I didn't.

"Q. Then as you started up the road following your father and mother, and June's father and mother, they were in the Carley car and you and June in the Carey car? A. That's right.

"Q. Approximately how fast were you all driving? A. Between forty and forty-five.

"Q. Between forty and forty-five miles an hour you mean? A. Yes. . . .

"Q. But at that time as I understand it, you did not feel sleepy or drowsy? A. No.

"Q. Then as you went on up the road did you at any time feel any concern about yourself with reference to whether or not you couldn't stay on the road? A. No, I had no idea I couldn't stay on the road.

"Q. Did you have any idea you were going to sleep? A. No.

"Q. Or that you might run off the road? A. No.

"Q. If you had had such a feeling would you have stopped or not? A. I would have stopped, not only to protect the occupant of the car, but to protect my own self.

"Q. Protect your own self—Now when you got up there near the scene of this accident, did you or not—Did something happen, either you nod, or something else that caused you to get off on the edge of the road and result in an accident? A. I dozed off or dropped to sleep maybe for a split second, you may call it sleep, may call it dozed, anyway, I was just out for a minute.

"Q. Did you have any knowledge or any warning that anything like that would occur before it did occur? A. No, if I had had any warning whatsoever that I was fixing to go to sleep, if anything had said 'Sybil, you are fixing to go to sleep', common sense would have caused me to stop.

"Q. Common sense would have caused you to stop, and you didn't have any such warning? A. No."

She further testified that she had on many occasions experienced drowsiness but had always been able to control the tendency and had never fallen asleep under such circumstances. Her momentary lapse was described by her as only for "a split second" or "a jiffy" during which time the car traveled only about ten feet. Upon being immediately aroused, she was completely aware of her situation, noticed a mail-box on the edge of the road which she was able to avoid, and otherwise maneuvered the car with a view to completely regaining the highway without the necessity for turning too abruptly back. The car, however, struck a culvert under an intersecting road and caused the injury. Some impeachment was sought through the testimony of plaintiff's mother, who testified that Mrs. Covington stated to her after the accident: "If I had only pulled out to the side of the road it wouldn't have happened—pulled out and slept a little, it wouldn't have happened." This was denied by Mrs. Covington.

We are of the opinion that the circumstances of this case do not, under the stated tests, justify a finding of wanton misconduct. The defendants' requests for peremptory instructions ought to have been granted.

Reversed, and judgment here for appellants.