196 So.2d 365 (1967)
Martin BROWNING and Henry Browning, Administrator of the Estate of Mrs. Mary Ida Browning, Deceased
v.
Edward SHACKELFORD.
No. 44255.
Supreme Court of Mississippi.
March 13, 1967.
Cunningham & Cunningham, Booneville, for appellant.
Stovall & Price, Corinth, for appellee.
BRADY, Justice:
In the trial court, cause number 1938, Martin Browning v. Edward Shackelford, and cause number 1941, Henry Browning, Administrator of the Estate of Mrs. Mary Ida Browning, Deceased v. Edward Shackelford, were consolidated by mutual agreement on May 11, 1966. From a peremptory instruction granted the appellee, Edward Shackelford, this appeal is prosecuted. Tersely the record discloses the following essential facts:
On Sunday, November 1, 1964, a short time after the noon meal, appellant, Martin Browning, and his wife, Mrs. Mary Ida Browning, requested appellee, Edward Shackelford, who was accompanied by his wife, to drive them from their home near Iuka, Mississippi, to a small community *366 known as Walker's Switch in Tishomingo County to inspect a home which the Brownings were contemplating purchasing. After inspecting this property the two couples proceeded on a Sunday afternoon drive. Appellee was driving the automobile with his wife seated beside him, and appellant and his wife were sitting on the rear seat. After driving around in Tishomingo County the parties crossed the state line into Alabama. Around four o'clock in the afternoon while in Alabama appellee was traveling west up a small hill and proceeding around a slight curve to his left at a speed of 25-30 miles per hour. His car collided at the crest of the hill with a car which was approaching from the opposite direction driven by a Negro, L.J. Young, and traveling at a speed of 25-30 miles per hour. The point of impact was the left front side of each car. The record discloses that neither driver saw the other vehicle until a moment or two before the collision occurred. The appellee did not sound his horn, and neither driver made an effort to avoid the collision, evidently because neither had sufficient time in which to do so. As a result of the collision, Mr. Browning sustained certain personal injuries, and Mrs. Browning died en route to a hospital in Memphis, Tennessee.
The pertinent facts concerning the actions of the drivers of the cars and the manner in which the collision occurred are practically undisputed. There is proof that appellant had stated to appellee and his wife that he did not consider "it was Mr. Shackelford's fault that the accident happened."
After appellants had offered their proof and rested, the trial court sustained appellee's motion for a directed verdict and entered an order dismissing both cases. The basis upon which the trial court entered the order was that there was not sufficient evidence in the record from which the jury could find any willful or wanton misconduct on the part of the appellee which proximately caused or contributed to this accident. From these orders of dismissal this consolidated appeal is prosecuted. Appellants admit as follows:
(W)e concede the burden to be on the plaintiffs to establish that conduct of the defendant proximately causing this wreck amounted to wantonness, taking into consideration all the evidence most favorable to the plaintiffs together with all the inferences that a jury might reasonably draw from the evidence. We cite Section 95, Code of Alabama, 1940, Title 36 which reads as follows:
"Liable only for willful or wanton misconduct.  The owner, operator or person responsible for the operation of motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle. (1935, p. 918)."
This accident occurred in Alabama, and since 1883 the rule in Mississippi has been that the lex loci delicti governs between litigants who are involved in a wreck in another state. See Chicago, St. Louis & N.O. Ry. Co. v. Doyle, 60 Miss. 977 (1883). Counsel representing appellants are correct in their citation of Alabama Code, Title 36, section 95 (1958) as the governing substantive law. Appellants in their contention that the appellee was guilty of wantonness in the car's operation urge that the Alabama law, section 5 of the Code, required the appellee to approach the crest of the hill at no greater rate of speed than fifteen miles per hour. We quote from said section:
Fifteen miles an hour in traversing or going around curves or traversing a grade upon a highway when the driver's view is obstructed within a distance of one hundred feet along such highway in the direction in which he is proceeding.
*367 Appellants urge that the testimony of appellee when construed most favorably in their behalf shows that he was driving his automobile 25-30 miles per hour and was therefore violating the provisions of section 5. Appellants urge that operating the car at such a rate of speed at this time and place and under these conditions constituted wantonness. Appellants further urge that the law required appellee to keep a reasonable lookout ahead for dangers or obstructions. They assert that if he could not see clearly, he had no right to assume that his course was free of danger but should have anticipated that some hazard lay immediately beyond his range of vision. Appellants maintain that his failure to do this constituted wanton conduct, citing Holley v. Josey, 263 Ala. 349, 82 So.2d 328 (1955).
Appellants further urge that the failure of appellee to sound his horn as he approached the crest of the hill should be considered in determining whether his acts were wanton, citing section 95 of the Code. It is the assertion of appellants that all these acts on the part of appellee when taken together are sufficient to justify the jury in finding wantonness on the part of appellee in the operation of his automobile. Appellants cite Godfrey v. Vinson, 215 Ala. 166, 169, 110 So. 13, 16 (1926), to show what may constitute wantonness:
Wantonness may arise from knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on the disaster. Wantonness may, of course, arise after discovery of actual peril by conscious failure to use preventive means at hand.
Appellants cite Lewis v. Zell, 279 Ala. 33, 181 So.2d 101, 104 (1965), in support of the same proposition. This rule, appellants point out, has been repeatedly announced by the Alabama Supreme Court. Appellants readily concede that it is not their contention that appellee willfully brought on this disaster since this is not necessary to make out a case for the jury. Appellants urge that wantonness alone is sufficient to hold the appellee answerable for the appellants' injuries. Appellants urge that there is a distinct difference between willfulness and wantonness as has been pointed out by the Alabama Supreme Court, citing Atlantic Coast Line Railroad Co. v. Brackin, 248 Ala. 459, 28 So.2d 193 (1946), and Graves v. Wildsmith, 278 Ala. 228, 177 So.2d 448 (1965). In the latter case we find these words:
Wantonness has been defined as the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury. (278 Ala. at 231, 177 So.2d at 451.)
The record also reflects that when the automobile driven by the appellee was forty-seven feet east of the crest of the hill, the top of the vehicle approaching from the opposite direction could be seen while it was seventy-eight feet west of the crest. This constituted more than one hundred feet of visibility along the road in the direction in which the appellee was proceeding. Appellants contend that this fact, coupled with the failure of the appellee to check his speed, to sound his horn and to keep a reasonable lookout, constitutes sufficient evidence to show wantonness on his part. Appellants conclude, therefore, that the trial court erred in granting appellee's peremptory instruction.
It is apparent that the basic issue in this case is whether the court erred in granting the peremptory instruction requested by the appellee. That in turn is dependent upon whether the evidence offered by appellants was sufficient to raise a jury issue as to appellee's alleged wanton *368 misconduct. The statute under which this question must be determined is Alabama Code, Title 36, section 95 (1958), which provides as follows:
The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle.
As stated previously, under the rule adopted in this state the substantive law of Alabama is controlling under the facts of this case. The Alabama court has drawn a distinction between what constitutes gross negligence and willful or wanton misconduct. In Smith v. Roland, 243 Ala. 400, 403, 10 So.2d 367, 369-370 (1942), the Alabama Supreme Court said:
"Gross negligence" is negligence, not wantonness.
"Before one can be convicted of wantonness, the facts must show that he was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct, that with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury. * * *"
In passing, the record fails to disclose that the appellee had driven over this road before or that he was familiar with the hill and slight curve therein. The distinction between the concepts of "gross negligence" and "wantonness" was clearly outlined by this Court in Covington v. Carley, 197 Miss. 535, 541-542, 19 So.2d 817, 818 (1944), where, in an interpretation of the Alabama automobile guest statute, we stated:
Guest statutes of the general tenor of the Alabama act have been enacted in a number of states. Their language is not identical. Some include "gross negligence" or "reckless disregard of the rights of others", or "gross or wanton negligence." We confine discussion to those cases involving the language of the Alabama law. We could not profitably pursue definitions involving other terms, for we are not here dealing with a negligence statute. * * * The purpose of the Alabama guest statute is to deny recovery to a certain class, to wit, nonpaying guests, as against the operator of a motor vehicle. Any reference therein denying immunity to those guilty of wilful or wanton misconduct must, therefore, be viewed as an exception, and a guest is limited to rights arising out of such misconduct. * * *
It is the purpose of such statutes to deny to a guest any right to sue for mere negligence. Nor is gross negligence enough unless the statute so provides. * * *
As stated, the Alabama statute is not conceived as one penalizing negligence as such. Indeed, negligence and wilfulness or wantonness are incompatible terms. * * * Otherwise expressed, wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care. * * * (Emphasis added.)
As stated previously, it is well established in this state that where personal injuries have been sustained in a foreign state, the lex loci delicti determines the applicable substantive law. On the other hand, the procedural law of Mississippi is applicable in the trial of the case as to the weight and sufficiency of the evidence. Wright v. Jacobs, 228 Miss. 641, 89 So.2d 708 (1956); Illinois Cent. R. Co. v. Perkins, 223 Miss. 891, 79 So.2d 459 (1955); Southern Railway Co. v. Buse, 187 Miss. 752, 193 So. 918 (1940); Welch v. Kroger *369 Grocery Co., 180 Miss. 89, 177 So. 41 (1937).
Applying the Alabama guest statute, it was not sufficient for appellants to prove mere negligence or even gross negligence on the part of appellee in order to present a jury issue. In order to make an issue of fact for the jury, it was necessary for appellants to produce evidence of such a nature that the jury could reasonably find that the appellee was guilty of willful or wanton misconduct. The record discloses, and appellants concede, that the appellee was not guilty of willful misconduct. The issue is therefore narrowed to whether there was sufficient evidence to establish wanton misconduct on the part of appellee. In determining this question there is involved a judicial interpretation of the meaning of "misconduct." In construing the meaning of the phrase "wanton misconduct" the Alabama Supreme Court in Law v. Saks, 241 Ala. 37, 38-39, 1 So.2d 28, 29 (1941), pointed out:
We fail to find evidence in this case justifying a reasonable inference that the defendant on this occasion, with reckless indifference to consequences consciously and intentionally, did a wrongful act or omitted some known duty which produced the injury. * * *
In that case the plaintiff's evidence was insufficient to withstand a directed verdict. The facts revealed that the accident occurred at or near a hill crest and that the "defendant's car (though there was no center line mark) was over the center 1 1/2 or 2 feet at or near the point of collision with ample space, however, for the passage of the two cars."
While there is a factual difference, nevertheless, there is a similarity between the facts in the Law case and those in the consolidated cases at bar. In the Law case the court said:
Plaintiff perhaps correctly described the situation when she said: "We were both just driving along," and we can find nothing in her testimony or that offered in her behalf justifying a submission of the wanton count to the jury. (241 Ala. at 39, 1 So.2d at 29.)
This conclusion was based upon testimony comparable to that offered by appellant Martin Browning in the case at bar wherein he stated that prior to the accident they were just riding around and, "The first thing I knowed (sic) the car just struck us and that's all I know." L.J. Young, the operator of the other vehicle involved in the wreck, also testified as follows:
"Q. You did not see Mr. Shackelford's car until you actually hit?
"A. That's right.
"Q. And were you looking out toward the front?
"A. Was I looking?
"Q. Yes.
"A. Yes sir, I sure was.
"Q. Were you keeping a good lookout?
"A. Yes sir.
"Q. And you saw the car as quick as you could?
"A. Yes sir.
"Q. If the car was not visible to you before then, Mr. Shackelford couldn't see your car, could he?"
Objection was here made by Mr. Cunningham and sustained.
"Q. In any event, you didn't see the car until you actually hit, did you?
"A. That's right.
"Q. And you do not know how fast he was going?
"A. No sir.
"Q. And if you couldn't see his car, you don't know how fast he was going, do you?
"A. No sir.

*370 "Q. And you don't know whether he was on his right side or not, do you?
"A. No sir.
"Q. So, as far as you know, he was as far to his right as you were to your right on your side of the road?
"A. Yes sir."
In Smith v. Roland, supra, involving the construction of the Alabama guest statute as it applied to a suit for the wrongful death of a passenger riding in the rear of defendant's truck, there was evidence from which the jury could have found that the defendant was driving around a curve at a speed of forty or forty-five miles per hour and met an approaching truck and had to swerve back to his proper side of the road to avoid a collision. This sudden swerve caused the bolster on the back of defendant's truck to swing around and strike the passenger, inflicting injuries from which he died. A jury verdict for plaintiff was reversed by the Alabama Supreme Court, which stated:
This evidence at best shows simple negligence. It does not warrant an inference of wanton conduct.
The court therefore erred in refusing the affirmative charge. * * * (243 Ala. at 403, 10 So.2d at 369.)
Johnson v. McNear, 255 Ala. 457, 52 So.2d 154 (1951), also involved the proper interpretation of "wanton misconduct." In that case the plaintiff's evidence showed that the car in which she was riding proceeded around a sharp curve while descending a steep hill. The defendant's truck was seen coming toward the car from around another sharp curve at a speed of 25-30 miles per hour and in close proximity to plaintiff's automobile. The car in which plaintiff was riding immediately pulled as far to the right as possible and stopped against a guard cable which kept it from going down a precipitous embankment. While the car was stopped, it was struck by defendant's truck which whipped across the road into the wrong lane of traffic. In reversing a jury verdict for plaintiff the Alabama Supreme Court stated:
There is an absence of evidence showing or tending to show the frequency of the use of said highway at the point of collision and at the hour of the day in which it occurred,  facts essential to sustain a charge of wilful and wanton injury. * * * Before one can be convicted of wilful and wanton wrong "the facts must show that he was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct, that with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some known duty which (proximately) produced the injury." * *
After due consideration of the evidence on the record, we are of opinion that it did not warrant a verdict for the plaintiff under count two of the complaint. The court, therefore, committed reversible error in refusing defendant's written charge A. (255 Ala. at 461, 52 So.2d at 157.)
The case of English v. Jacobs, 263 Ala. 376, 82 So.2d 542 (1955), renders considerable aid in ascertaining the irreducible minimum of evidence which is essential to present a jury question with respect to wantonness. In that case the deceased and the defendant were attending a club meeting at the home of a friend. There came a very heavy rain, and when the meeting terminated, although the rain had slackened, it was still continuing to fall heavily. In order to reach the paved highway from the friend's house it was necessary to drive over a two mile stretch of sand and clay road, which, because of the rain, had become very slick and extremely hazardous. The defendant had had little experience in driving under such adverse conditions and was aware of her lack of skill. However, in spite of this, she declined assistance from her friend's husband. While the defendant *371 was following another car, she observed the preceding car skid on a clay spot which was particularly slick and dangerous. One of the passengers in defendant's car stated that she was familiar with this particular strip of road and offered to drive the car through this hazard. Again the defendant declined the offer of assistance and continued toward the clay spot where her car slid out of control and into a stump, causing the guest to hit her head against the windshield sustaining injuries which caused her death.
The Alabama Supreme Court recognized first and reiterated the validity and applicability of the automobile guest statute. That court stated:
"The duty owed to a guest under section 95, Title 36, Code of 1940, is not to willfully or wantonly injure or kill him. The same measure of duty is owed to a trespasser. * * *"
We cannot here be concerned with the harshness of the above rule. If the public policy of this state requires modification and a softening of the rule, remedial action lies in the exclusive province of the legislature. The placing of an invited guest in the same category with a trespasser was a radical departure from the rules of the common law. However, this state, through its representative legislature, adopted the rule and their power to do so has repeatedly been upheld in this and other states. We cannot and will not by judicial interpretation vary this standard. (263 Ala. at 378, 82 So.2d at 544.)
In that case the court reviewed numerous Alabama cases involving an interpretation of "wantonness" and stated:
"* * * `Wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party could be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury.' * * *." (263 Ala. at 379, 82 So.2d at 544.)
In the English case the Alabama Supreme Court distinguished between "wilfullness" and "wantonness," as follows:
To constitute "willful or intentional injury", there must be knowledge of danger accompanied with a design or purpose to inflict injury, whether the act be one of omission or commission. To constitute "wantonness" the design may be absent if the act is done with knowledge of its probable consequences and with a reckless disregard of those consequences. * * * (623 Ala. at 379, 82 So.2d at 545.)
The facts in the English case made out a far stronger case of wantonness than those in the case at bar. Yet there the Alabama Supreme Court, in determining whether the question of wantonness should have been submitted to a jury, resolved that issue against the plaintiff. Furthermore, in the English case there was a mental attitude present which was more characteristic of indifference to consequences than that present in this case, since there the acts of the driver were done with full knowledge of the dangers inherent therein.
This Court in Covington v. Carley, supra, recognized that in order to constitute wantonness the mental attitude of the driver must have been characterized by a reckless indifference to the consequences of his acts, coupled with full knowledge of the dangers inherent therein. We there said:
Where the misconduct is wilful, there is an intentional injury. If it is wanton, there is an intentional and wrongful act or omission whose resultant harm is consciously previsioned and recklessly ignored or disregarded. * * *
Hence wantonness characterizes a mental state aware of misconduct and indifferent *372 to its obvious consequences. Weir v. Lukes, 13 Cal. App.2d 312, 56 P.2d 987. More than this it is projected forward to and qualifies the ultimate injury, lending to it color of a gross and unconcerned willingness which, in its moral and legal aspects, is indistinguishable from intent. * * * (197 Miss. at 542-543, 19 So.2d at 818-819.)
In Graves v. Wildsmith, supra, cited by both appellants and appellee, we held that the trial court should not have submitted the question of wantonness to the jury when it was apparent that the appellant did not know that a motor bike was following her at a distance of 20-25 feet and did not know that her misconduct in veering her automobile to the left and then turning to the right without giving the proper signals would likely result in injury to the person following her.
The Alabama Supreme Court has repeatedly held that the prima facie provisions set forth in Alabama Code, Title 36, section 5, paragraphs (a) and (b) (1958) do not establish the maximum speed limits as a hard and fast rule. That court has consistently rejected any effort to remove or restrict the flexibility of this statute. Frith v. Studdard, 267 Ala. 315, 101 So.2d 305 (1958); Ditsch v. Baggett Transp. Co., 258 Ala. 26, 61 So.2d 98 (1952); Roberts v. McCall, 245 Ala. 359, 17 So.2d 159 (1944). The Alabama court has further held that violation of the statute regulating speed does not constitute negligence as a matter of law. Mink v. Brown, 276 Ala. 3, 158 So.2d 647 (1963); Brownell-O'Hear Pontiac Co. v. Taylor, 269 Ala. 236, 112 So.2d 463 (1959).
The proof in the case at bar fails to show either a reckless disregard for the safety of others on the part of the appellee or a conscious knowledge that injury was likely to result if he continued on his way up the hill at the time of the collision. With reference to the differences in the evidence requirements of Mississippi and Alabama pertaining to the submission of an issue to a jury, it is apparent that the evidence in this case fails to measure up even to the minimum required under the scintilla rule of Alabama. To have submitted the question of wantonness to the jury would have completely obliterated the distinction between negligence, simple or gross, and wantonness, and, in effect, would have nullified the automobile guest statute of Alabama.
We are not unaware that within the last ten years there has been a saltation in the application of the long established conflict of laws rule that the lex loci delicti shall determine the substantive law of the litigants where personal injuries have been sustained in a foreign state. This innovation, as reflected in Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963), and similar decisions from seven or more other states, presents a drastic repudiation of the operation of lex loci delicti which has been recognized and followed in this state since 1883 (Chicago, St. Louis & New Orleans Railway Co. v. Doyle, supra). The profound impact of this repudiation can be appreciated when it is remembered that nineteen other states have adopted conflict of laws rules similar to that utilized in Mississippi, and twenty-nine states have laws relating to injuries to guest passengers while riding in automobiles comparable to Alabama's guest statute.
We do not imply that the operation of lex loci delicti is not subject to analysis, adoption or rejection. But we do hold that under all the facts in the case at bar it is not within reach of our cable-tow to debate the propriety or desirability of the substitution of the rule announced in Babcock v. Jackson, supra. In a proper case, under proper facts, and at a proper time, the intrinsic merits and demerits of the yardsticks advanced in the Babcock and other comparable cases, if presented, can be considered.
Litigants, their attorneys and the trial courts are entitled to trust and rely upon *373 the rules of law which this Court has announced and consistently upheld. To suddenly deviate from a long established rule, recognized and accepted by the litigants, their attorneys and the trial courts, would do violence to standards of fair play and is not within the prerogative of this Court.
Rule 6 of this Court deals particularly with "plain errors" and does not require or permit us to adopt a neo-advisory position and suggest to litigants other potential offenses or defenses. It is the immutable obligation of a court to sit, and to sit only, as an objective and indifferent arbiter of the rights of the litigants. This Court has been meticulous in striving to fulfill this austere duty.
For the foregoing reasons the lower court was correct in granting the peremptory instruction, and the judgment is therefore affirmed.
Affirmed.
JONES, PATTERSON, INZER, SMITH and ROBERTSON, JJ., concur.
ETHRIDGE, Chief Justice (specially concurring).
I concur in the affirmance of these consolidated cases, but would like to state what I understand the Court is holding, and what it is not deciding. The pleadings were drafted on the theory that the substantive law of Alabama, including its guest statute, applied; it was tried on that basis, and decided by the circuit court on that theory. On appeal to this Court, appellants "concede(d)" that they must establish "that conduct of the defendant proximately causing this wreck amounted to wantonness * * *," and that the substantive law of Alabama applied. For these reasons, this Court does not consider in this case whether Covington v. Carley, 197 Miss. 535, 19 So.2d 817 (1944), should be overruled, and whether the law of the forum and domicile of all parties should be applied to the issue of liability. For the same reasons, we do not decide in this case the validity or merits of the now widely and increasingly accepted rule of conflict of laws or more properly of choice of laws, designated as the center-of-gravity or most substantial relationship rule. Cf. Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 172 N.E.2d 526, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961); Pearson v. Northeast Airlines, Inc., 307 F.2d 131 (2d Cir.1962); Currie, Conflict, Crisis and Confusion in New York, 1963 Duke L.J. 1.
The old rule that the governing law was invariably that of the place where the injury occurred is today almost wholly discredited as an unvarying guide to a choice of law decision in all tort cases. The only merits of that mechanical doctrine were certainty and predictability. It bears no relationship to any relevant considerations for choosing one law as against another in a tort case. For example, here all the parties were residents of this State, the host-guest relationship arose here, the automobile was garaged here, and the parties took a brief Sunday afternoon trip for a few miles into Alabama (where the accident happened), beginning and ending their excursion in Mississippi.
The interest of Mississippi is unquestionably more direct than that of Alabama, whose concern in the rights of the parties involved in this accident is at best minimal. Alabama's sole relationship with the occurrence is the purely adventitious circumstance that the collision occurred there. Alabama's guest statute makes it very difficult, and practically impossible for a guest to recover: He must show wilful or wanton misconduct. The established policy of this State, contrary to that of Alabama, permits a guest to recover damages from a host driver for the host's ordinary negligence. Green v. Maddox, 168 Miss. 171, 149 So. 882, suggestion of error overruled, 151 So. 160 (1933); Hatcher v. Daniels, 228 Miss. 196, 87 So.2d 490 (1956).
*374 Restatement (Second) Conflict of Laws (Tentative Draft No. 9), concisely summarizes the pertinent and realistic rules in the following sections:
§ 379. The General Principle.
(1) The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort.
(2) Important contacts that the forum will consider in determining the state of most significant relationship include:
(a) the place where the injury occurred,
(b) the place where the conduct occurred,
(c) the domicil, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
(3) In determining the relative importance of the contracts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states.
§ 379a. Personal Injuries.
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties as to the particular issue involved, in which event the local law of the latter state will govern.
§ 379l. Tortious Character of Conduct. The law selected by application of the rule of § 379 determines whether the actor's conduct was tortious.
In Clark v. Clark, 222 A.2d 205 (N.H. 1966), Chief Justice Kenison of New Hampshire recently stated: "No American Court which has felt free to re-examine the matter thoroughly in the last decade has chosen to retain the old rule." Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); Schmidt v. Driscoll Motel, Inc., 249 Minn. 376, 82 N.W.2d 365 (1957); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964); Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965); Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218 (1955); Wilson v. Faull, 27 N.J. 105, 141 A.2d 768 (1958); Clark v. Clark, 222 A.2d 205 (N.H. 1966); Hopkins v. Lockheed Aircraft Corp., (Fla. Feb. 1, 1967).
Babcock v. Jackson and Clark v. Clark are particularly relevant to the facts of the instant case. See Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U.L.Rev. 267 (1966); Note, The Aftermath of Babcock, 54 Cal.L.Rev. 1301 (1966); Ehrenzweig, Guest Statutes and the Conflict of Laws, 69 Yale L.J. 595 (1960).
Moreover, in other fields of law, this Court has examined choice-influencing considerations and the most significant relationships of the parties in order to determine the choice of applicable law. Mandle v. Kelly, 229 Miss. 327, 90 So.2d 645, 92 So.2d 246 (1956) (workmen's compensation); Burnham Van Service, Inc. v. Dependents of Moore, 250 Miss. 165, 164 So.2d 733 (1964) (workmen's compensation); see Crawley, Conflict of Laws in Mississippi as to Contracts, 14 Miss.L.J. 240 (1942). However, these precedents and considerations are not evaluated, I conceive, in the controlling opinion, because of the posture of this case on this appeal.
GILLESPIE, P.J., and RODGERS, J., join in this opinion.