## Scott, Etc. *v.* Fowler

No. 40114 April 9, 1956 86 So. 2d 477

*Russell Wright,* Meridian, for appellant.

*Snow & Covington,* Meridian, for appellee.

McGEHEE, C. J.

The plaintiff, Lina Scott, sustained an injury while riding in her father's automobile with him, her mother, Mrs. Lydia Scott, and her younger brother. The automobile of her father, J. T. Scott, was struck in the rear by the automobile of the defendant, Harry Fowler, on the 22nd day of June, 1954, when the Scott car was being followed by the Fowler car. The suit for damages on behalf of the plaintiff was submitted to the jury, and there was a verdict in favor of the defendant Fowler. The appeal is from the judgment entered on that verdict, and it is assigned as error that the plaintiff was entitled to a directed verdict in her favor as requested, and that in any event she is entitled to have the case reversed and remanded for a new trial because of other alleged errors assigned, and especially because the verdict is contrary to the overwhelming weight of the evidence.

J. T. Scott, father of the plaintiff, was en route to Chunky Shoals where he and other members of his family who were in the car, were going with the intent to go in swimming. He was driving the car south on the main U. S. Highway 11 and had turned off said highway into a cutoff of said Highway 11, going in a westerly direc-

tion until he arrived at a stop sign thereon at the intersection thereof with U. S. Highway 80. The driver, together with his wife and his said daughter, testified that when he arrived at the large orange and black stop sign where the cutoff from the main U. S. Highway 11 intersected Highway 80, he stopped for the said sign, since there were automobiles approaching the intersection on Highway 80 at that time. The cutoff from the main U. S. Highway 11 entered the four-lane U. S. Highway 80 which ran east and west; that while they were stopped at the stop sign at the intersection of the cutoff from Highway 11 with the said Highway 80, the defendant ran his automobile into the rear of the Scott automobile with considerable force, so as to badly damage the said automobile and to cause the plaintiff to sustain bruises and to suffer shock and pain as a result of being thrown violently against the front seat of the car.

James Edwards, a member of the traffic department of the City of Meridian, testified that he arrived at the scene a few minutes after the accident, he observed signs of the collision such as debris, "mud and glass and other stuff," in the cutoff of Highway No. 11 at the place where the defendant's car would have struck the Scott car if the latter was stopped for the stop sign at the time the collision occurred. The officer further testified that the Scott car was about three-fourths across the two north lanes of the said Highway 80 when he arrived, although it would have turned into the lane farthest north on Highway 80 if the driver of the Scott car intended to go west to Chunky Shoals as testified; and the officer testified that there were skid marks extending from a point immediately before the stop sign would be reached and all the way to the Scott car where it was standing when he arrived at the scene.

On the other hand, the defendant, Fowler, testified that he stopped his car about one and a half car lengths behind the Scott car while the latter was stopped at the

large orange and black stop sign where the Highway 11 cutoff intersected Highway 80, and that thereupon the Scott car proceeded forward, and while he, the defendant, was following the Scott car and looking at some automobiles which were approaching the intersection from the east on Highway 80, the Scott car stopped again, and that he ran into it while still looking toward the east at the oncoming cars on Highway 80. However, J. T. Scott, owner of the Scott car, and his wife, Mrs. Lydia Scott, and daughter, Lina Scott, testified that they did not proceed forward from the stop sign into the intersection and then stop again, but that their car was driven forward into the intersection by the force of the collision of the Fowler car with the same, and was driven to the point three-fourths across the two north lanes of Highway 80 where the same was found by the traffic officer upon his arrival.

The plaintiff and her witnesses were corroborated by the physical facts, including the debris found in the cutoff from Highway 11 behind the stop sign, by the location of the Scott car when it came to a stop after being struck, and the extent of the damage to the Scott car. It was for the jury to consider whether or not in view of the proximity of the cars to each other when they first stopped for the stop sign, according to the testimony of the defendant, the car in the rear could have gained sufficient momentum to have done such damage to the Scott car if it started forward from the stop sign and stopped again before it was struck. The testimony of the defendant was uncorroborated when he testified that he stopped his car to the rear of the Scott car before he reached this stop sign instead of running into the rear thereof without stopping at all and while the Scott car was still stopped for the sign at the intersection.

If, as testified by the defendant, the driver of the Scott car started forward into the intersection and then stopped again, there is no question involved as to the failure

of the driver of the Scott car to give a signal of his intention to stop again; since the defendant concedes that he was not looking any longer at the car ahead of him, as he says it started into the intersection, but he was looking to the east for approaching traffic on Highway 80. In other words, he would not have seen a signal if it had been given.

██ █ We are of the opinion that under all of the facts and circumstances set forth in the testimony the case was one that presented a question for the jury. We are of the further opinion, however, that the verdict is so contrary to the overwhelming weight of the evidence considering the location of the ''mud and glass and other stuff'' indicating the place of the impact, the skid marks on the highway, and the force of the impact in the light of the damage done to the rear of the Scott car, the court was in error in overruling the motion for a new trial on the ground that the verdict was contrary to the overwhelming weight of the evidence.

██ █ It is also assigned as error and as a ground for reversal of the case that the court sustained an objection to the officer answering the following question: ''Did Mr. Fowler make any statement to you that afternoon as to whose fault it was?'' We assume that this question would not have been asked of the traffic officer by the plaintiff's counsel unless he had good reason to believe that the officer would answer that Mr. Fowler said that it was his fault. The question sought to elicit from the officer that the defendant had made an admission against interest and the question was most relevant and competent.

██ █ We also think that the instruction which seemed to present to the jury the theory that the defendant had the right to look to the east on Highway 80 for oncoming traffic and to stop looking toward the car ahead of him, was calculated to mislead the jury, since a driver of an automobile may look to his left or right and ahead

of him almost instantaneously, and surely in sufficient time to avoid colliding with a car in front of him if he has it under proper control under the circumstances shown by the testimony.

 Finally, the plaintiff made it known to the defendant that the doctor whom she had consulted after the accident was available to the defendant to be put on as a witness if the defendant should so desire. Since the doctor was available to both of the parties as a witness, we do not think that it was proper to instruct the jury that "plaintiff cannot rely upon offering to let Dr. Rush testify, but if she wanted his testimony she had the right to have him subpoenaed and put on the witness stand, if available." Under the circumstances no instruction should have been given as to the failure of either party to introduce the doctor.

For the reasons hereinbefore stated, we think that the case should be reversed and remanded for a new trial.

Reversed and remanded.

*Hall, Kyle, Arrington,* and *Gillespie, JJ.,* concur.