MASON v. SHOOK.

No. 41713      March 6, 1961      127 So. 2d 658

*Cunningham & Cunningham,* Booneville, for appellant.

*Donald Franks,* Booneville, for appellee.

JONES, J.

This is an appeal from the Circuit Court of Prentiss County in an action for personal injuries alleged to have been received by appellee in Chicago, Illinois, while riding as a guest in a car driven by appellant, the trial of which resulted in judgment for plaintiff for $15,000.

The case was tried under the Illinois law, which State had a guest statute in effect at the time of the accident, appearing in Smith-Hurd Illinois Statutes (1950), Chapter 95½, Section 58a:

"No person riding in a motor vehicle as a guest, without payment for such ride, nor his personal representatives in the event of the death of such guest, shall have a cause of action for damages against the driver or operator of such motor vehicle or its owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

The facts of the instant case are substantially as follows: Clinton Shook, a brother of appellee, was working in Chicago. The appellee carried some effects of his brother, Clinton, to him in a truck owned by appellee. Clinton Shook worked at a filling station, and on arrival there, it was decided that appellee's truck needed a new transmission. The appellee was unaccustomed to driving in Chicago, and when his brother Clinton offered the use of his car for appellee to search for a second-hand

transmission, appellee declined it unless someone would drive the car for him. Appellant agreed to drive the car gratuitously and they left Clinton Shook's place, in search of a transmission, with appellant driving; Austin Shook, another brother of appellee, in the center on the front seat; the appellee on the outside on the front seat; and a friend, Dexter Knight, on the back seat. All four of these boys had been friends for a number of years and all were from Mississippi. They traveled for some distance on Costner Street, where traffic was heavy and there were traffic lights to observe, to Ogden Avenue. This Avenue was a six-lane thoroughfare and a very busy street, having three traffic lanes for eastbound traffic and three for westbound traffic. The parties herein turned west on Ogden, traveled to a junk yard, to enter which the driver made a left turn across Ogden Avenue, and not finding a transmission available for a satisfactory price, they left, proceeding across the eastbound traffic lane on Ogden and turning left or west on Ogden Avenue and thereafter traveling at a speed of approximately 35 miles per hour. The legal speed on this Avenue was 40 miles per hour. This was on May 5, 1956, around six o'clock P.M. daylight saving time. They were traveling on the inside westbound traffic lane, separated from the inside eastbound traffic lane only by a painted line. Appellant's car was being operated in second gear, and while still in second gear, a Plymouth station wagon, traveling west and on the right of appellant's car, passed and cut in front of appellant's car a short distance from the traffic light at the intersection of Ogden Avenue and 31st Street. Ogden Avenue and 31st Street intersected at somewhat of an angle. Appellant exclaimed, "Watch that fool!" The station wagon came to a stop in front of appellant's car as the traffic light aforesaid turned yellow. He, appellant, applied his brakes attempting to turn left to avoid striking the station wagon, but the right rear of his car struck the left rear of the station

wagon at an angle and came to a halt with the front end of appellant's car in the inside eastbound traffic lane on Ogden, being situated partly in the inside westbound traffic lane and partly in the eastbound traffic lane. On the impact the door next to which appellee was riding came open and he was thrown to the pavement. Austin Shook, the center man on the front seat, was thrown where, as he stated, his right hand was out of the car and touching the pavement, but he caught with his left hand on part of the front seat of the car. While in this position, Austin Shook yelled, "Hold it!" Dexter Knight, on the back seat, at the same time was yelling, "Get it out of here."

Mason testified that he saw traffic approaching in the eastbound lane, but there was some little dispute as to whether any traffic was so approaching. The appellant also testified that looking through the right back window of his car he saw the plaintiff get up and walk away, while the plaintiff himself testified that he was on the ground and had not arisen at the time the appellant started the car again. It was under these circumstances that the appellant put the gas to the car and pulled to the right onto 31st Street.

Appellee testified that while he was on the ground and was looking up at the bottom of the car with his head and shoulders under the car, appellant started same and the right wheel either ran over him or hit him in the lower back and knocked him out from under the car. The record is not clear as to whether appellee received his injuries when he fell from the car or when the car started and, as he says, struck him.

The suit was originally filed on September 3, 1956, and in the declaration the appellee charged that at the time of the collision he was thrown onto the paved street with great force and impact and was hit by the right rear wheel of the appellant's vehicle. There was no charge

of being struck on the starting of the car after the collision.

Appellee testified that before the declaration was filed he had disclosed all important facts to his counsel. On July 6, 1956, after the accident, the appellee also signed a written statement in which he said the collision occurred and he fell from the car, but no mention was made of his being injured when the car started again.

Appellant filed an answer in which it was alleged that the case was subject to the laws of Illinois, and that in order to recover appellee would be required to prove that he received his injuries as a result of wilful and wanton acts on the part of the appellant.

Thereafter, the declaration was amended setting up the facts with reference to the starting of the car after the accident as hereinbefore set forth, and alleging wanton and wilful misconduct. In the trial of the case in the lower court, the judge instructed peremptorily that there was no wilful or wanton conduct on the part of the defendant which resulted in the collision with the station wagon, and that the appellee could not recover on account thereof, but the case was submitted to the jury on the question as to whether or not subsequent events disclosed wilful and wanton conduct by the appellant proximately resulting in injuries to the appellee.

As stated, all four of the occupants of the car were friends. The question presented to us is whether the facts disclosed were sufficient and whether the proof thereof was sufficient to justify a verdict by the jury for appellee.

The guest statute of Illinois and the proof necessary thereunder has been before the Courts of Illinois a number of times. In Robinson, Administrator, etc. v. Workman, 129 N. E. 2d 32, 8 Ill. App. 2d 42, the Court said: "But in all the cases, it has been held that the burden of proving that the driver's conduct was wilful and wanton is one that must be discharged by greater weight or

preponderance of evidence and cannot be made to rest upon speculation or conjecture or circumstances from which evidence of freedom from such wilful and wanton misconduct might be equally compatible with that of guilt of such conduct. Tygett v. Penry, 344 Ill. App. 427, 101 N. E. 2d 442, citing Pure Torpedo Corp. v. Nation, 327 Ill. App. 28, 39-41, 63 N. E. 2d 600.''

And in the same case, the Illinois Court said: ''Misconduct which falls within the category designated as being wilful and wanton is generally said to be conduct exhibiting a reckless disregard for the safety of others or conduct under circumstances indicating a conscious indifference to its consequences. Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 69 N. E. 2d 293; Provenzano v. Illinois Central R.R. Co., 357 Ill. 192, 191 N. E. 287; Bartolucci v. Falleti, 382 Ill. 168, 46 N. E. 2d 980; Ashby v. Irish, 2 Ill. App. 2d 9, 118 N. E. 2d 43.''

In Tygett v. Penry, supra, the Illinois Court said: ''Under the law of this State, where someone travels as a guest in an automobile the right to recover must be predicated upon wilful and wanton misconduct on part of a defendant, 1949 Illinois Revised Statutes, Chapter 95½, Section 58a; Clark v. Storchak, 384 Ill. 564, 52 N. E. 2d 229; Bartolucci v. Falleti, 382 Ill. App. 168, 46 N. E. 2d 980, and this burden to establish that the conduct was in fact wilful and wanton is one which must be discharged by the greater weight of preponderance of the evidence and cannot be made to rest upon speculation or conjecture or circumstances from which evidence of freedom from such wilful and wanton misconduct might be equally compatible with that of guilt of such conduct. Pure Torpedo Corp. v. Nation, 327 Ill. App. 28, 39-41, 63 N. E. 2d 600. . . . . . . If defendant made errors in judgment in an emergency which were accompanied by no evil intent or purpose, or any consciousness of probable injury, it would not establish wilfulness or wantonness.''

Our own Court, in Covington v. Carley, 197 Miss. 535, 19 So. 2d 817, had before it the Alabama guest statute, which also permits recovery only if caused "by the wilful or wanton misconduct" of the operator, owner, or person responsible for the operation of said motor vehicle.

In considering the question of wilful and wanton conduct, it might be noted that in the Alabama statute quoted in the *Carley* case, recovery had to be predicated upon wilful *or* wanton misconduct. In the Illinois statute it is predicated upon wilful *and* wanton misconduct. In discussing the question of wilful or wanton conduct, Judge Alexander, in the *Carley* case, said:

"In the statute 'wilful' and 'wanton' are of equal gravity and are of equal legal import, Surgan v. Parker, La. App., 181 So. 86, Where the misconduct is wilful, there is an intentional injury. If it is wanton, there is an intentional and wrongful act or omission whose resultant harm is consciously previsioned and recklessly ignored or disregarded. For one to be recklessly indifferent to results, such results must be presented to a sensible awareness of their reasonable certainty. One may not ignore an eventuality which he does not perceive. If he recks not of impending harm, it is not because he knows not of it but because he cares not. Indifference shuts its eyes to that which just before had been visible.

"Hence wantonness characterizes a mental state aware of misconduct and indifferent to its obvious consequences. Weir v. Lukes, 13 Cal. App. 2d 312, 56 P. 2d 987. More than this it is projected forward to and qualifies the ultimate injury, lending to it color of a gross and unconcerned willingness which, in its moral and legal aspects, is indistinguishable from intent. Thus the original act retains a status as an important but subordinate incident. Vessel v. Seaboard Air Line R. Co., 182 Ala. 589, 62 So. 180; 67 C. J. 218. Whereas in mere negligence cases the act or omission is paramount and the

resultant harm is fastened to the actor by the fibers of a fiction that he intended a result which was natural and probable. The only difference between the legal import of wilfulness and wantonness in the statute is that while both contemplate a foreseeable harm, the former chooses to cause injury and the latter chooses not to avoid it.

''Such actors are by the best reasoned cases placed in the class of wilful wrongdoers. . . . The expressions veer definitely toward the lexicon of criminal offenses and away from the glossary of merely tortious acts. . . . . . The act or omission must, under the statute, be more than that of mere inadvertence or momentary thoughtlessness. . . .''

In his assignment of error and brief the appellant presents a question as to whether the lower court erred in permitting the instruction of the fact that appellant after the accident stated to the policeman that it was all his fault. Appellant argues that this was a conclusion of the witness and objected to the admission of this statement, which objection was overruled by the court. The appellant then explained his statement by stating that he understood that under the laws of Illinois if you ran into the back of a car, it was your fault. We think under the decision of Scott v. Fowler, 227 Miss. 643, 86 So. 2d 477, this statement has been held admissible by our Court. The other assignments of error, in view of our disposition of the case, we do not deem it necessary to discuss, since they probably will not arise on a new trial.

We have considered this case very thoroughly, and in view of what is required by the statute as set out by the authorities hereinbefore shown, and that at the time the car was started the second time the appellant was acting under an emergency, with one occupant of the car telling him to ''hold it'' and another telling him to ''get it out of there'', together with all the other surrounding facts and circumstances necessitating a hurried judgment, we are of the opinion that the verdict is against

the great weight of the evidence and that justice would be better served if another jury would pass upon the facts. The case is therefore reversed and remanded for a new trial.

Reversed and remanded.

*Lee, P. J.,* and *Kyle, Gillespie, Rodgers, JJ.,* concur.