MYERS, P.J.,
for the Court.
¶ 1. Robert Giles (Giles) and his minor sons, Roberto and Antonio Giles (collectively the Gileses), brought suit against Robert Brown and the Leake County Board of Supervisors (Board) in the Leake County Circuit Court for personal injuries. The circuit court granted summary judgment in favor of Brown and the Board. The matter came to this Court on appeal,[1] and we reversed and remanded the case to *1235 the circuit court to determine: (1) whether the children were engaged in criminal activity, given the absence of criminal charges or convictions; (2) whether any criminal activity on the part of the children had a causal nexus to the accident; and (B) whether Brown acted with reckless disregard in his pursuit of Giles.
¶ 2. On remand, the circuit court found that the children were engaged in criminal activity, that such criminal activity had a causal nexus to the accident, and that Brown did not act with reckless disregard. Aggrieved, the Gileses[2] appeal and assert that: (1) that the circuit court erred in finding in favor of Brown and the Board, (2) the circuit court erred in allowing Jerry Barrett to testify as an expert witness, and (3) the circuit court erred in denying the Gileses’ motion requesting the court to reimburse them for the cost of the transcript. Finding no error, we affirm.
FACTS
¶ 3. The underlying facts for the case at bar are the same facts in Giles I. In Giles I, we stated the facts as follows:
On September 17, 2003, Giles and his children were riding their ATV 4-wheel-er along Highway 488 near Carthage, Mississippi. Brown received a call that there were individuals riding an ATV on the highway, which is against the law. Brown set out in response to the call and encountered Giles.[3] Brown, with emergency lights activated, pulled behind Giles. Giles pulled off the road onto an unidentified piece of property. Brown asked Giles for his license, and Giles informed Brown that his license was suspended. Neither man left his respective vehicle during the exchange.
What happened next is disputed. According to Brown, Giles became belligerent and eventually cursed at Brown before leaving and returning to the highway on his ATV. Brown testified that he followed with lights and siren activated until Giles made a sudden turn, causing the accident at issue. Brown testified that he did not know whether he had hit Giles’s vehicle or Giles’s children. Brown indicated that he had attempted to slow down and avoid the accident, but was unable to do so and went into a ditch. Brown suggested that he might have been able to avoid the accident if Giles had activated his turn signal or given some other indication that he was about to turn.
According to Giles, he explained to Brown that he did not have his license, but did live neaiby and suggested that he would take Brown to his house so that Brown could confirm that Giles lived nearby. Giles believed that if he did so, Brown would be more likely to let him go with simply a warning. Giles testified that he never cursed at Brown. Giles averred that he then pulled out onto the road, with the understanding that Brown would follow him to his house. Neither Giles nor his sons could recall hearing Brown’s siren or seeing any emergency lights as Brown followed them down the road. In fact, Giles testified that he never looked back to con *1236 firm that Brown was following him. He simply assumed that, because of their exchange and his slow pace, Brown would follow. Giles testified that he slowed down considerably for his turn, although he admitted that he did not activate a turn signal or otherwise indicate that he was about to turn. Giles testified that Brown’s vehicle hit the ATV, causing Giles and his sons to fall off and causing the ATV to collide with a third vehicle at the intersection.
It is not clear exactly how fast the parties were traveling. Brown indicated that they might have been going as fast as forty to forty-five miles per hour, while the Gileses estimated their speed to be closer to twenty to twenty-five miles per hour. Giles and his sons also testified that they slowed down significantly for the turn that eventually resulted in the accident. Amber Wilcher, the driver of the vehicle that was hit by the ATV at the intersection, testified that she saw Brown hit Giles’s vehicle before the ATV collided with her car. She also thought that Brown’s vehicle might have collided with her own. Apparently no photographs were taken of the damage to the various vehicles, or such photographs were not included as part of the record. An accident report was filled out, but the version of events related was clearly given by Brown, as the officers filling out the report made no independent findings to explain what had happened. As a result of the accident, Giles suffered an injury to his right foot which required thirteen stitches, Roberto had scrapes on his body, and Antonio suffered two broken legs and a broken pelvis. Criminal charges were filed against Giles as a result of the accident, and he pled guilty to reckless driving, improper equipment, improper restraint, and two simple assault charges.
Id. at 613-14 (¶¶ 3-6).
¶ 4. On remand, Brown, Giles, Roberto, Antonio, and Wilcher testified during the Gileses’ case-in-chief. Additionally, the deposition of Suzanne Sharpe, Brown’s former wife, was read in open court. Brown called Jerry Barrett as an expert witness in the field of police pursuit.
¶ 5. At the conclusion of the testimony, the court ordered that the parties use a copy of the transcript to draft their proposed findings of fact and conclusions of law. After reviewing the proposed findings of fact and conclusions of law submitted, the circuit court ruled in favor of Brown and the Board. Aggrieved from the trial court’s ruling, the Gileses appeal.
STANDARD OF REVIEW
¶ 6. An appellate court affords a circuit court judge sitting without a jury the same deference as a chancellor. City of Jackson v. Perry, 764 So.2d 373, 376(¶ 9) (Miss.2000) (citing Puckett v. Stuckey, 633 So.2d 978, 982 (Miss.1993)). That is, after reviewing the entire record, we will affirm if the judge’s findings of fact are supported by substantial, credible evidence and are not manifestly wrong or clearly erroneous. Id.
DISCUSSION
1. Reckless Disregard
¶ 7. The trial court found that Brown and the Board were immune from liability under the Mississippi Tort Claims Act (MTCA). After weighing the testimony of the witnesses and reviewing the evidence, the trial court found that Brown did not *1237 act in reckless disregard for the safety of the Gileses.
¶ 8. The MTCA provides the exclusive remedy for tort actions brought against a governmental entity or its employees. Miss.Code Ann. § 11-46-7(1) (Supp.2008). Although the MTCA waives sovereign immunity for tort actions, it also prescribes certain exemptions from this statutory waiver under which a governmental entity retains its sovereign immunity:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim....
[[Image here]]
(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury[.]
Miss.Code Ann. § 11-46-9 (Supp.2008).
¶ 9. “[0]fficers who act within the course and scope of their employment, while engaged in the performance of duties relating to police protection, without reckless disregard for the safety and well being of others, will be entitled to immunity.” City of Jackson v. Brister, 838 So.2d 274, 281(¶ 15) (Miss.2003).
¶ 10. “[T]he trial judge, sitting in a bench trial as the trier of fact, has sole authority for determining credibility of the witnesses.” Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987) (citing Hall v. State ex rel. Waller, 247 Miss. 896, 903, 157 So.2d 781, 784 (1963)). In other words, in a bench trial, the trial judge has the prerogative to place whatever weight he chooses on witness testimony. Univ. of Miss. Med. Ctr. v. Johnson, 977 So.2d 1145, 1149(¶ 11) (Miss.Ct.App.2007).
¶ 11. The issue on appeal is whether the trial court erred in finding that Brown did not act in reckless disregard. The trial court clearly favored the testimony of Brown and Barrett over that of the other witnesses.[4] Because the issue of credibility is left to the trial court’s sound discretion, we must take Brown’s testimony as true in reviewing the trial court’s decision.
¶ 12. “[R]eckless disregard’ embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.” City of Jackson v. Lipsey, 834 So.2d 687, 692(¶ 16) (Miss.2003) (citations omitted). “Reckless disregard is more than mere negligence, but less than an intentional act” and “usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.” Miss. Dep’t of Safety v. Dum, 861 So.2d 990, 994-95(¶ 10) (Miss.2003) (citations omitted).
¶ 13. “This Court will look to the totality of the circumstances when considering whether someone acted in reckless *1238 disregard. [We must judge] the nature of the officer’s actions on an objective standard with all the factors that they were confronted with, taking into account the fact that the officers must make split-second decisions.” Phillips v. Miss. Dep’t of Public Safety, 978 So.2d 656, 661(¶ 19) (Miss.2008) (citations omitted).
¶ 14. On numerous occasions, our appellate courts have addressed whether a police officer acted in reckless disregard while in Ms or her official capacity. In City of Jackson, 838 So.2d at 281(¶ 23), the supreme court found that a police officer acted in reckless disregard. The police were pursing a suspect at high rates of speed through a heavily populated area that included apartment complexes. Id. at 280(¶ 21). It was also revealed that the police were traveling in excess of twenty miles per hour over the posted speed limit. Id. The supreme court also placed emphasis in their finding on the fact that the police officers violated a departmental policy “that pursuit may only be initiated ... [when] the suspect’s escape is more dangerous to the community than the risk posed by the pursuit.” Id. at 280(¶ 21).
¶ 15. In Dum, 861 So.2d at 995(¶ 11), the supreme court found that a state trooper acted with reckless disregard in an automobile accident where the state trooper attempted to pass a vehicle on its left side after the car had activated its left turn signal in a congested area with limited visibility.
¶ 16. The supreme court has also found reckless disregard in Lipsey, 834 So.2d at 693(¶ 23) (officer suddenly turned his vehicle in front of oncoming traffic without having his headlights on or using his blue lights or siren), and in Perry, 764 So.2d at 377-78 (¶¶ 18-19) (officer was driving twenty-seven miles per hour over the posted speed limit without using his siren or blue lights while on his way to dinner when he collided with a vehicle exiting a parking lot).
¶ 17. In Morton v. City of Shelby, 984 So.2d 323, 336(¶31) (Miss.Ct.App.2007), this Court found that a policeman did not act with reckless disregard where the officer struck a jogger with his car. The evidence revealed that it was late at night when the accident occurred, and the jogger was wearing dark clothing and no reflective gear. Id. at 335(¶ 29). Additionally, there was no evidence presented that the officer was speeding or driving recklessly. Id. at 336(¶ 31). While this Court found that the evidence might indicate negligence, it did not rise to the higher standard of reckless disregard. Id. at 335(¶ 30).
¶ 18. Moreover, in McCoy v. City of Florence, 949 So.2d 69, 83(¶ 55) (Miss.Ct.App.2006), this Court, in applying the ten factors[5] for determining reckless disregard set out in City of Ellisville v. Richardson, 913 So.2d 973, 977(¶ 15) (Miss.2005), found the officer did not act in reckless disregard in a high-speed pursuit involving a stolen vehicle driven by a person with a suspended license. This chase occurred on Highway 49 though Florence *1239 toward Richland, Mississippi. McCoy, 949 So.2d at 74(¶ 10).
¶ 19. Turning to the case at bar, we do not find that Brown’s action amounted to reckless disregard for the safety of others. It was established that this accident occurred sometime around five o’clock in the evening. Giles stated that he customarily took his boys riding on the four-wheeler when he returned home from work. Brown testified that it was clear enough that day for him to be able to see Giles approximately a quarter of a mile away. This chase and accident occurred on a rural highway in Leake County, Mississippi that was not congested at the time. Additionally, Brown testified that he stayed one-and-a-half to two ear lengths behind the four-wheeler prior to the accident, traveling approximately twenty-five to thirty miles per hour. Brown stated that he turned on his blue lights and sirens once he began following Giles, and they remained on throughout the chase. More importantly, Barrett, an expert in police pursuit, interviewed Brown, reviewed all the depositions taken in this case and the accident report, and viewed the accident scene with Brown. He ultimately concluded that Brown did not act in reckless disregard in this accident.
¶ 20. While Brown’s actions may rise to the level of negligence, we find no error in the trial court’s determination that Brown’s conduct did not reach the heightened level of reckless disregard for the safety of others. Therefore, we find that Brown’s actions are protected under the sovereignty immunity provided by the MTCA. This issue is without merit.
2. Qualification of Barrett to Offer Expert Testimony on Police Pursuit
¶ 21. The Gileses argue that the circuit court erred in qualifying Barrett as an expert in the area of police pursuit. Specifically, the Gileses argue that Barrett did not have sufficient training or experience to testify as an expert under Mississippi law.
¶ 22. We apply an abuse-of-discretion standard in reviewing a trial court’s decision to admit or deny evidence, including expert testimony. Bullock v. Lott, 964 So.2d 1119, 1128(¶ 25) (Miss.2007) (citation omitted). A trial court’s decision to allow expert testimony will be affirmed “unless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice a party in a civil case, or the accused in a criminal case.” Id. (citing Jones v. State, 918 So.2d 1220, 1223(¶ 9) (Miss.2005)).
¶ 23. Mississippi Rule of Evidence 702 states that a witness may be qualified as an expert “by knowledge, skill, experience, training, or education.” The comment to Rule 702 also states: “As has long been the practice in Mississippi, Rule 702 recognizes that one may qualify as an expert in many fields in addition to science or medicine, such as real estate, cotton brokering, auto mechanics or plumbing.” “[A]n expert must have acquired special knowledge of the subject matter in question by study of recognized authorities ‘or by practical experience’ enabling him to give the jury assistance and guidance in solving some problem which jurors are not able to solve because of their own inadequate knowledge.” Ludlow Corp. v. Arkwright-Boston Mfrs. Mut. Ins. Co., 317 So.2d 47, 50 (Miss.1975) (citations omitted). A witness is qualified as an expert where he “was possessed of peculiar skill and knowledge upon the subject matter pertaining to which he was called to testify.” Id.
*1240 ¶ 24. We do not find the trial court abused its discretion in permitting Barrett to testify as an expert in the field of police pursuit. Barrett began working for the Jackson Police Department in 1969. He remained in various divisions of the Jackson Police Department until his retirement in 1995. Barrett testified that in every position he worked at in the Jackson Police Department, he was involved in police pursuit, except the auto theft division, where he worked for fifteen months. In November 1987, Barrett attended a tactical driving school, which trained him in pursuit driving. Barrett also testified that many of his positions with the Jackson Police Department required him to supervise and instruct other officers in police pursuit.
¶ 25. After retiring from the Jackson Police Department, Barrett went to work at the Mississippi Law Enforcement Officer’s Training Academy (MLEOTA). While at the MLEOTA, his duties mainly pertained to instructing law enforcement officers on driving techniques. To prepare for this position, Barrett attended a police emergency-driver certification program in 1996. He testified that this was a week-long course involving classroom instruction and practical police driving experience. In 2001, Barrett attended another police driving school. He stated this school was also a week-long program lasting day and night, and involved classi’oom training and tactical driving experience. Barrett was certified as a tactical vehicle-intervention instructor at the close of this program.
¶ 26. Barrett was the primary driving instructor at the MLEOTA from 1996 until 2007. He put together a lesson plan for the MLEOTA driving program using materials from other driving programs around the nation. He stated that he teaches a tactical driving program which involved pursuit driving and emergency driving, among other things. Each law enforcement officer in Mississippi is required to attend and pass this, or a similar, driver training program. Barrett stated that he has taught as many as fourteen driving programs a year while at MLEO-TA. In summary, Barrett testified that everything he taught at MLEOTA dealt with pursuit driving.
¶ 27. Given Barrett’s long and extensive experience, skill, and knowledge of police pursuit derived from working for the Jackson Police Department, the various police driving schools he attended, and his experience in teaching police-pursuit programs, we find that the trial court did not err in allowing him to testify as an expert in police pursuit. This issue has no merit.
3. Prejudgment Costs
¶ 28. Lastly, the Gileses allege that at the conclusion of the trial, the circuit court ordered a copy of the transcript and then ordered the parties to split the cost. The Gileses further allege that the circuit court ordered the attorneys to use the transcript to write proposed findings of fact and conclusions of law. It is undisputed that at the trial level, the transcript cost $5,160 and that the Gileses’ portion of this cost was $2,580. The Giles-es argue that the circuit court erred in denying their motion for reimbursement for the cost of the transcript. Specifically, the Gileses argue that the circuit court has no authority to order the parties to pay for a transcript in order to aid the court in rendering its decision.
¶ 29. On our review of the record, we find this issue was waived because the Gileses failed to make a timely objection. *1241 Contrary to the Gileses’ assertions on appeal, our review of the record indicates that the trial court instructed the parties to purchase — and split the cost of — a transcript to be used by each side for post-trial briefing. This instruction was initially made prior to the start of the trial. The Gileses offered no objection then, nor did they object when the instruction was reiterated at the close of trial. In fact, we can find no objection in the record save the “Plaintiffs Motion for Reimbursement of Prejudgment Transcript,” filed on March 24, 2008. This motion, by its own admission, was filed approximately two weeks after the Gileses had paid for and received the trial transcript. The Gileses’ acquiescence to the court’s instruction and failure to make a timely objection at trial waives this issue on appeal. Busick v. St. John, 856 So.2d 304, 310(¶ 16) (Miss.2003). Additionally, because the Gileses have cited no authority in support of their argument for reimbursement, this issue is procedurally barred. Ruff v. Estate of Ruff, 989 So.2d 366, 372(1123) (Miss.2008). This issue is procedurally barred and without merit.
¶ 30. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., AND BARNES, J. KING, C.J, DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Giles v. Brown, 962 So.2d 612, 618(1121) (Miss.Ct.App.2006) (Giles I).

. In Giles I, we found that Robert Giles’s criminal activity of driving on the highway on an ATV and driving with a suspended license barred him from proceeding with the case. Therefore, only the minor Gileses were involved on remand.

. It is not clear from the record whether Giles and his sons are the individuals that Brown received a call about,

. The dissent argues that the trial court favored the testimony of Brown over that of Sharpe and Wilcher solely because the laLter are women. The dissent relies upon the court's statement in its initial judgment that it would expect "most” women to be inexperienced at estimating distance. This statement, however, is taken from the trial court's initial judgment, which was superseded by a "corrected” judgment, filed by the court a short time thereafter. The corrected judgment remarks upon "these” women's experiences, an assertion we find to be supported by the record with regard to both Sharp and Wilcher.

. The ten factors enunciated are as follows: (1) the length of the chase; (2) the type of ■neighborhood; (3) the characteristics of the streets; (4) the presence of vehicular or pedestrian traffic; (5) the weather conditions and visibility; (6) the seriousness of the offense for which the police are pursuing the suspect; (7) whether tire officer proceeded with sirens and blue lights; (8) whether the officer had available alternatives which would lead to the apprehension of the suspect besides pursuit; (9) the existence of police policy which prohibits pursuit under the circumstances; and (10) the rate of speed of the officer in comparison to the posted speed limit. Richardson, 913 So.2d at 977(¶ 15).