# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-IA-01139-SCT

*MISSISSIPPI DEPARTMENT OF*
*TRANSPORTATION*

*v.*

*KENNETH MUSGROVE AND LATASHA*
*MUSGROVE, INDIVIDUALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/19/2018 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| TRIAL COURT ATTORNEYS: | COREY D. GIBSON |
| | B. ADAM HAYS |
| | OBY T. ROGERS |
| | CHRISTOPHER O. MASSENBURG |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL D. GOGGANS |
| | B. ADAM HAYS |
| | CHRISTOPHER O. MASSENBURG |
| ATTORNEYS FOR APPELLEES: | MICHAEL V. RATLIFF |
| | OBY T. ROGERS |
| | COREY D. GIBSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 04/16/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Mississippi Governor Phil Bryant declared a state of emergency on January 27, 2014,

in anticipation of an imminent winter storm. In response to the governor's declaration,

Mississippi Department of Transportation (MDOT) placed limestone material on roadways

as a remedial measure. Four days after the state of emergency was declared, Kenneth

Musgrove lost control of his car and crashed on Highway 37, where MDOT had placed the limestone material, severely injuring his wife and himself.

¶2. The Musgroves filed a complaint against MDOT in the Circuit Court of Covington County on June 23, 2015, for damages from the car accident. MDOT filed a motion for summary judgment, asserting that it was participating in emergency-management services under the Mississippi Emergency Management Law (MEML) and therefore was immune from liability. The trial court denied MDOT's motion for summary judgment, finding that there was a "genuine issue of material fact as to whether MDOT exercised due care in maintaining the road by placing gravel on the road and failing to warn drivers" of the gravel. MDOT timely filed its petition for interlocutory appeal, arguing that the MEML explicitly grants state agencies complete immunity from liability and that the trial court had erred by applying the standards set forth in the Mississippi Tort Claims Act (MTCA) instead of applying the willful-misconduct standard set forth in the MEML.

¶3. This Court finds that MDOT has immunity under the MEML and that the trial court erred by applying the MTCA's immunity standards instead of applying the MEML's standard. Accordingly, we reverse and render.

## STATEMENT OF THE FACTS

¶4. On January 27, 2014, Mississippi Governor Phil Bryant issued a proclamation declaring a state of emergency because a significant winter storm was approaching the state. The proclamation warned portions of the state, including Covington County, of the impending storm and of the potential for hazardous driving conditions. It directed all

agencies of the state, including MDOT, to discharge their emergency responsibilities. The proclamation was in effect from January 27, 2014, through February 10, 2014. In response to the proclamation, MDOT deployed its emergency-management services and used deicing techniques on roads across the affected regions, including Highway 37 in Covington County. MDOT's deicing techniques consisted of placing limestone materials on roadways in anticipation of the expected hazardous driving conditions.

¶5.     On January 31, 2014, Kenneth Musgrove was driving on Highway 37 when he lost control of his car and wrecked. Musgrove claims that he lost control due to the placement of the limestone materials, which had been applied to Highway 37 as it led into a curve. Both Kenneth and Latasha Musgrove were severely injured in the wreck.[1]

¶6.     The Musgroves filed a complaint in the Circuit Court of Covington County on June 23, 2015. They claim that MDOT's placement of the limestone material and its failure to warn drivers of the limestone's presence was the ultimate cause of their wreck. The Mississippi Highway Safety Patrol's accident report states that the vehicle's driver lost control "due to gravel which was on [the] roadway due to recent ice storm." A highway patrolman testified in a deposition that there had been an accident earlier in the day that was

---

[1] Kenneth Musgrove suffered a broken back and now is paralyzed from the chest down. Latasha Musgrove suffered a broken neck.

in the same general area as the Musgroves' accident.[2] Nothing in the record indicates that MDOT had knowledge of the prior accident.[3]

¶7.     On December 6, 2016, MDOT filed a motion for summary judgment, asserting that it was immune from the suit because the MEML protected it from tort liability during an emergency situation.

¶8.     After a hearing, the trial court entered an order on April 20, 2017, denying MDOT's motion for summary judgment. The trial court found the following:

> 1. MTCA does not supersede the MEML, but each should be read in conjunction with the other statute.
>
> 2. Mississippi Code Section 63-3-303 made MDOT's placement and maintenance of traffic-control devices a discretionary function, but there still could be liability under MTCA Sections 11-46-9(1)(v) and (w), for failure to warn of a known danger that is not open and obvious.
>
> 3. Applying the standard set forth in **Brantley v. City of Horn Lake**, 152 So. 3d 1106 (Miss. 2014), Mississippi Code Section 65-1-65 required MDOT to maintain the roads at all times; thus MDOT had a ministerial duty and there was nothing to suggest that duty was altered during an emergency situation.
>
> 4. The [c]ourt finds there is a genuine issue of material fact as to whether MDOT exercised due care in maintaining the road by placing gravel on the road and failing to warn drivers of the road condition that the gravel placed on the road.

---

[2] Mississippi Highway Patrolman Leno Holmes stated in his deposition that he had responded to an earlier accident "[m]aybe 60 yards" south of the location of the Musgroves' accident.

[3] In Patrolman Holmes's deposition, he was asked, "At any point in time did you report the wrecks or did you call anybody and ask them about the . . . [?]" Inexplicably, the deposition cuts off at that point.

That order was not received by MDOT's counsel, who filed a motion for relief under Mississippi Rule of Civil Procedure 60. On July 19, 2018, the trial court entered an amended order denying MDOT's motion for summary judgment. MDOT timely filed its petition for interlocutory appeal, which was granted.

¶9.     MDOT raises the following issues on appeal: 1) whether MDOT is immune from liability for acts undertaken under the MEML and 2) whether the trial court erred by ruling that the MTCA immunity standard applied rather than the MEML immunity standard. MDOT argues that the MEML explicitly grants state agencies complete immunity from liability for its "emergency management activit[ies]" during a state of emergency, absent willful misconduct. MDOT argues also that the trial court erred when it considered the MTCA's limited immunity provisions instead of the MEML's complete immunity. The Musgroves argue that the trial court did not err by denying the motion for summary judgment because the "trial court correctly found that a genuine issue of material fact exists as to whether MDOT is liable under the MTCA and is not excused for its willful misconduct by the MEML."

**STANDARD OF REVIEW**

¶10.     Under Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). "This Court reviews a trial court's grant or denial of a motion for

5

summary judgment or a motion to dismiss under a de novo standard." ***Arceo v. Tolliver***, 949 So. 2d 691, 694 (Miss. 2006) (citing ***Monsanto v. Hall***, 912 So. 2d 134, 136 (Miss. 2005)). "[T]he burden of demonstrating that no genuine issue of fact exists is on the moving party." ***Moore ex rel. Moore v. Mem'l Hosp. of Gulfport***, 825 So. 2d 658, 663 (Miss. 2002). "The party opposing the motion must be diligent and may not rest upon mere allegations or denials in the pleadings but must by allegations or denials set forth specific facts showing there are genuine issues for trial." ***Davis v. Hoss***, 869 So. 2d 397, 401 (Miss. 2004) (citing ***Richmond v. Benchmark Constr. Corp.***, 692 So. 2d 60, 61 (Miss. 1997)).

## DISCUSSION

**I.**     **Whether MDOT has immunity for its actions during the state of emergency.**

¶11.    MDOT argues that the MEML gives it complete immunity for its emergency-management activities during emergency situations, such as when a state of emergency has been proclaimed. The Mississippi Emergency Management Law (MEML), specifically Mississippi Code Section 33-15-21(a), states,

> Neither the state nor any political subdivision thereof, nor other agencies, nor, except in cases of willful misconduct, the agents, employees, or representatives of any of them engaged in any emergency management activities, while complying with or attempting to comply with this article or any rule or regulation promulgated pursuant to the provisions of this article, shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.

Miss. Code Ann. § 33-15-21(a) (Rev. 2010).

¶12.    Under the MEML, the state and its agencies shall not be liable for their actions when dealing with emergencies, except when such actions constitute willful misconduct. The

6

Musgroves argue that MDOT's placement of the limestone material and its failure to warn constituted willful misconduct. They contend also that MDOT engaged in willful misconduct by failing to warn after having knowledge of a recent prior accident near the location of their accident.

¶13.   We first interpret the MEML and then we determine whether MDOT committed willful misconduct and, thus, cannot claim immunity under the MEML.

### A.      The MEML

¶14.   Neither party disputes that there was a state of emergency in effect at the time of the accident and that MDOT's actions were undertaken in response to the governor's emergency proclamation, thus implicating the MEML. MDOT asserts that because an accident occurred during a declared state of emergency and because MDOT's emergency-management activities failed to constitute willful misconduct, it is entitled to immunity under the MEML.

¶15.   The Musgroves rely on a Mississippi Court of Appeals case's definitions and interpretation of "reckless disregard" and "willful misconduct" to support their claim that "liability for willful misconduct under MEML appears to be the same as liability for reckless disregard under MTCA." *See **Herndon v. Miss. Forestry Comm'n***, 67 So. 3d 788 (Miss. Ct. App. 2011).[4] But these definitions from ***Herndon*** undermine rather than support the Musgroves' position. The ***Herndon*** court defined "reckless disregard" as "more than mere negligence, but less than an intentional act." ***Herndon***, 67 So. 3d at 796 (internal quotation

---

[4] In ***Herndon***, the Court of Appeals found that the Mississippi Forestry Commission (MFC) was immune both under the MTCA and the MEML because, although the employee's conduct "may have been negligent," the conduct did not constitute "reckless disregard of safety" or "willful misconduct." ***Herndon***, 67 So. 3d at 795.

marks omitted) (quoting ***Giles ex rel. Giles v. Brown***, 31 So. 3d 1232, 1237 (Miss. Ct. App. 2009)). The court then defined "[w]illful misconduct" as "misconduct committed voluntarily and intentionally." ***Id.*** (internal quotation marks omitted) (quoting *Willful misconduct*, Black's Law Dictionary (9th ed. 2009)). This Court has explained "willful misconduct": "Where the misconduct is wilful, there is an intentional injury." ***Mason v. Shook***, 240 Miss. 478, 486, 127 So. 2d 658, 661 (1961). These definitions establish that the two terms are distinct and that they are by no means identical or interchangeable. Reckless disregard is something less than an intentional act, which is the kind of act that is required to show willful misconduct. Nothing in the record demonstrates or even suggests an intention on the part of MDOT to harm the Musgroves or other motorists by the placement of limestone on the surface of a state highway during a winter-storm emergency. The Musgroves' contention that the reckless-disregard standard from the MTCA and the willful-misconduct standard from the MEML are the same is without merit.

¶16.    MDOT cites the Mississippi Court of Appeals case ***Parsons v. Mississippi State Port Authority at Gulfport*** to demonstrate how the MTCA does not override the MEML. *See* ***Parsons v. Miss. State Port Auth.***, 996 So. 2d 165 (Miss. App. Ct. 2008).[5] "Statutes on the same subject, although in apparent conflict, should if possible be construed in harmony with each other to give effect to each." ***Parsons***, 996 So. 2d at 169 (citing ***Roberts v. Miss.***

_____

    [5] The issue before the appeals court in ***Parsons*** was "whether the [MTCA had] supersed[ed] the [MEML]," and the court found that the two should be "read in conjunction with each other" and that the MTCA did not supersede the MEML. ***Parsons***, 996 So. 2d at 166, 169. The court also held, "the two statutes can be read together to provide immunity for the state and its agencies for its activities during times of emergency management while simultaneously being exempt from liability under the MTCA." ***Id.*** at 169.

8

*Republican Party State Exec. Comm.*, 465 So. 2d 1050, 1052 (Miss. 1985)). The ***Parsons*** court found that the MTCA did not override the MEML because the MEML "provides immunity to the state and its agencies for liability occurring during emergency situations." *Id.* The MEML is a more narrow immunity statute than the MTCA, is applicable only in emergency situations, and can be defeated only by willful misconduct.

¶17.    MDOT cites three federal cases that demonstrate how negligent acts in emergency situations do not constitute willful misconduct under the MEML. *See* ***Ecker v. United States***, No. 1:07-cv-1101-HSO-JMR, 2009 WL 10706019 (S.D. Miss. May 6, 2009); ***Estate of Martin ex rel. Echoles v. United States***, No. 1:08-cv-157-HSO-JMR, 2010 WL 2985471 (S.D. Miss. 2010); ***Lindsey v. Miss. State Port Auth.***, No. 1:06-cv-656-LG-RHW, 2006 WL 5209293 (S.D. Miss. 2006). ***Ecker*** and ***Martin*** involved a National Guard member who caused an automobile wreck while acting in response to a state of emergency. The federal district court in both cases found that there was "insufficient evidence indicating any willful misconduct" and granted immunity under the MEML. ***Ecker***, 2009 WL 10706019, at *4; ***Martin***, 2010 WL 2985471, at *3. The Musgroves argue that these three cases are inapplicable because the plaintiffs there could not prove willful misconduct. While these federal cases are not binding on this Court, we find them persuasive. They correctly describe the way in which MEML immunity protects the state and its agencies from liability for negligent acts during a state of emergency, absent willful misconduct. The Musgroves have failed to adduce evidence proving that MDOT's actions amounted to willful misconduct, not unlike the plaintiffs in the three federal cases.

**B.    Does MDOT have immunity for its placement of the limestone material on the road and its failure to warn of a dangerous condition?**

¶18.    The facts of this case implicate the MEML, which requires a finding of willful misconduct on the part of the state agency to foreclose MEML immunity. The question becomes whether MDOT's placement of the limestone material on the road and its failure to warn amount to willful misconduct. The Musgroves argue that MDOT's actions do constitute willful misconduct because: 1) MDOT "wrongfully" placed the limestone material on the road and did so without erecting warning signs and 2) MDOT "wrongfully" placed the limestone material on the road and "failed to clean up the gravel after having been warned about the dangerous condition it posed after having been alerted to the fact that another wreck had occurred earlier that same day."

¶19.    The Musgroves contend that MDOT's acts of placing the limestone material on the road constituted willful misconduct because MDOT should not have placed the material on a highway leading into a curve without putting up warning signs. Again, "willful misconduct" is "misconduct committed voluntarily and intentionally." *Herndon*, 67 So. 3d at 796 (internal quotation marks omitted) (quoting *Willful misconduct*, Black's Law Dictionary (9th ed. 2009)). The Musgroves have failed to provide evidence demonstrating that MDOT's placement of the limestone material and subsequent failure to warn was misconduct committed voluntarily and intentionally. "The party opposing the motion must be diligent and may not rest upon mere allegations or denials in the pleadings but must by allegations or denials set forth specific facts showing there are genuine issues for trial."

10

*Davis*, 869 So. 2d at 401 (citing ***Richmond***, 692 So. 2d at 61). MDOT's placement of the material on the roadway was not governmental misconduct because MDOT was acting in response to the governor's proclamation to "discharge their emergency responsibilities as deemed necessary as set forth in the State of Mississippi's Comprehensive Emergency Management Plan."[6] Although MDOT intended for the limestone gravel to be placed on the road, its purpose was to make the road safer in keeping with the proclamation, not to cause harm intentionally.

¶20.    MDOT was acting during a declared emergency, and its placement of the limestone and failure to warn of its presence could have been, at most, negligent conduct, which is the sort of tortious activity or inactivity for which the MEML shields state agencies from liability. It was the legislature's express intent that the MEML would "provide for the rapid and orderly provision of relief" in emergency situations.[7] Miss. Code Ann. § 33-15-2(2)

---

[6] The Mississippi Comprehensive Emergency Management Plan (CEMP) provides sixteen Emergency Support Function Annexes (ESFs), which identify the specific activities required to support each numbered function and specify the agencies and organizations that are responsible for performing those activities. Miss. Emergency Mgmt. Agency, Miss. Comprehensive Emergency Mgmt. Plan (Dec. 2017), https://www.msema.org/wp-content/uploads/2018/10/2018-State-CEMP-Basic-Plan.pdf. While the ESFs name and describe the specific tasks, they do not describe the detailed procedures to perform them. *Id.* One of the ESFs is the Transportation Response Annex, which names MDOT as the primary agency and lists several support agencies. One of the support agencies is the Mississippi Highway Safety Patrol, which, under the plan and during an emergency situation, "[a]ssume[s] responsibility for detouring traffic away from sites that have experienced severe infrastructure damage (traffic regulation and control)." Miss. Emergency Mgmt. Agency, Miss. Emergency Support Function #1 - Transportation Response Annex (Rev. June 2017), https://www.msema.org/wp-content/uploads/2018/10/2018_ESF_01.pdf.

[7] "It is the intent of the Legislature to reduce the vulnerability of the people and property of this state . . . to provide for the rapid and orderly provision of relief to persons and for the coordination of activities relating to emergency preparedness, response, recovery

(Rev. 2010). The MEML gives state agencies freedom to deploy their emergency-management responsibilities rapidly and focus on "reduc[ing] the vulnerability of the people and property of this state," free of concern about potential liability for negligent acts. Miss. Code Ann. § 33-15-2(2) (Rev. 2010). The trial court found that MDOT has a duty to maintain the roads at all times and there was "nothing to suggest that duty is diminished or somehow altered during an emergency situation." But the legislature's stated intent makes it unmistakably clear that the MEML does alter such duties during emergency situations. MDOT's failure to place signs that warned of the gravel may have been negligent, but it did not rise to the level of willful misconduct. Therefore, that omission, even if misconduct, was clothed in the formidable armor of the MEML's immunity provision.

¶21.    The Musgroves argue also that there was willful misconduct by MDOT for having knowledge of a prior accident that occurred in the same general location as the Musgroves' accident and by not placing warning signs after receiving this knowledge. But the Musgroves have failed to provide any specific facts to support their allegation that MDOT knew of the prior accident. The party opposing the motion cannot rest upon mere allegations and denials, but must provide "specific facts showing there are genuine issues for trial." *Davis*, 869 So. 2d at 401 (citing *Richmond*, 692 So. 2d at 61). The Musgroves say that a "Mississippi Highway Patrolman confirmed that a wreck had taken place in the same location earlier in

_____

and mitigation among and between agencies and officials of this state . . . ." Miss. Code Ann. § 33-15-2(2) (Rev. 2010).

the day on which the Musgrove[s] were injured."[8] But the trooper's testimony establishes merely that the Mississippi Highway Safety Patrol had knowledge of the prior accident; it does not establish that MDOT had knowledge of the prior accident.

¶22.   MDOT's placement of the limestone material on the road and its failure to warn of its presence did not constitute willful misconduct. Therefore, MDOT is entitled to MEML immunity.

**II.      Whether the trial court erred by applying MTCA standards instead of the MEML's willful-misconduct standard.**

¶23.   The Musgroves argue that the trial court correctly found that "genuine issues of material fact exists [sic] concerning [MDOT's] liability under MTCA, from which it does not have liability under MEML," because MDOT's failure to warn subjected it to liability under MTCA. We find that the trial court erred by applying the wrong legal standard.

¶24.   It appears the trial court undertook an MTCA analysis without being asked to do so.[9] MDOT's motion for summary judgment was based on the MEML, not the MTCA.[10] The trial

---

[8] According to the CEMP, the Mississippi Highway Safety Patrol during an emergency situation assumes the responsibilities of traffic regulation and control. Patrolman Holmes testified that he had been at the scene of an earlier accident just sixty yards away from where the Musgroves' accident occurred.

[9] The trial court may have applied the **Brantley v. City of Horn Lake**, 152 So. 3d 1106 (Miss. 2014), standard correctly; but this Court overruled **Brantley** in **Wilcher v. Lincoln County Board of Supervisors**, 243 So. 3d 177 (Miss. 2018), thereby reestablishing the public-policy function test.

[10] It is apparent from the MDOT's motion for summary judgment and the Musgroves' response in opposition to MDOT's motion for summary judgment that neither party raised the MTCA as an issue. In MDOT's motion for summary judgment, it raised MEML immunity as a defense and, alternatively, asserted there was no duty owed to the Musgroves. In the Musgroves' response, they argued that 1) MEML immunity did not apply because the

13

court mistakenly injected questions based on the MTCA into the discussion. In truth, the MTCA has nothing to do with this case.

¶25. The Musgroves are correct that this case bears some similarity to *Wilcher v. Lincoln County Board of Supervisors*, in which this Court found the governmental entity was liable because its actions created the dangerous condition and it failed to warn of the condition it had created. *Wilcher v. Lincoln Cty. Bd. of Supervisors*, 243 So. 3d 177, 188 (Miss. 2018). But *Wilcher* is distinguishable from the Musgroves' case because *Wilcher* did not occur under emergency circumstances that triggered the MEML. *Id.* But for this accident's having occurred during a declared state of emergency, the Musgroves' *Wilcher* argument might have had merit.

¶26. The trial court should not have applied the MTCA; its focus should have been on whether a genuine issue of material fact existed as to whether MDOT's conduct constituted willful misconduct.

## CONCLUSION

¶27. The MTCA does not override the MEML's grant of immunity applicable to emergency-management situations. The MEML applies to limited subject matter, while the MTCA covers a multitude of subjects and circumstances. In a qualifying emergency situation and with no willful misconduct, there is absolute governmental immunity under the MEML. In such circumstances and in the event of willful misconduct by a state agency, courts should

---

snow storm was not the type of emergency for which the MEML was created; 2) MDOT's actions were willful misconduct; and 3) MDOT owed and breached its duty to maintain state highways.

14

proceed to determine whether there is immunity under the MTCA. The Musgroves have failed to provide specific facts, other than mere allegations and denials, to establish that MDOT voluntarily and intentionally committed misconduct. The trial court erred by applying MTCA standards before determining whether there was willful misconduct that defeated MEML immunity. The trial court erred also by failing to determine whether MDOT's actions constituted willful misconduct. Thus, this Court reverses the trial court's denial of MDOT's motion for summary judgment. MDOT is immune under the MEML. Accordingly, we reverse and render.

¶28. **REVERSED AND RENDERED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**